Elmer WILLIAMS, Respondent,

v.

STATE of Missouri, DEPARTMENT OF
SOCIAL SERVICES, DIVISION OF
FAMILY SERVICES, Appellant.

No. 21950.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 1998.

James M. McCoy, Jefferson City, for Appellant.

C. Wade Pierce, Swindle & Nunnery, for Respondent.

MONTGOMERY, Judge.

After an investigation into allegations of sexual abuse, the Division of Family Services ("DFS") made a determination of probable cause to suspect Elmer Williams ("Williams") sexually abused his grandson, G.W., Jr. ("Child"). Williams subsequently filed a re-

quest for review of DFS's determination by the Child Abuse and Neglect Review Board ("CA/NRB"). The CA/NRB issued a decision upholding the probable cause finding. Williams then filed a Petition for De Novo Judicial Review in the circuit court. After a hearing on the matter, the trial court issued a judgment reversing the determination of probable cause to suspect Williams as a perpetrator of child abuse. The court also entered judgment against DFS for guardian ad litem fees in the amount of $200.

DFS raises two allegations of error on appeal. DFS first argues the trial court applied the wrong standard of review in reversing the finding of probable cause to suspect Williams of child abuse. DFS next contends the trial court erred in ordering it to pay guardian ad litem fees. We affirm the trial court's determination on both issues.

During a counseling session, Child indicated Williams had sexually abused him on numerous occasions. On May 29, 1996, DFS received a "hotline" report concerning these allegations of abuse. As mandated by § 210.145.6,[1] DFS launched an investigation into the allegations. The investigation included interviews of family members and the counselor who made the initial hotline report. In addition, Child underwent a Sexual Assault Forensic Examination ("SAFE"). A rectal examination revealed a scar that may have been consistent with sexual abuse. The SAFE exam also found history and behavioral indicators consistent with abuse.

Based upon this investigation, DFS determined there was probable cause to suspect that Williams was the perpetrator of abuse against Child. DFS notified Williams of its determination. Thereafter, Williams filed an appeal with the CA/NRB pursuant to § 210.152.3. and 4. After reviewing the matter, the CA/NRB upheld DFS's determination of probable cause.

Williams subsequently filed a petition for judicial review in the circuit court. After a hearing, in which evidence was presented and testimony was heard, the court reversed the probable cause determination. In making this decision, the court commented on the standard of review in such cases:

> This court is of the opinion that its determination of this case is not limited to a review of the action of [DFS]. If the question before this court was whether or not [DFS] was acting reasonably in making the determination reasonable cause existed that [Williams] was a perpetrator of child abuse, this court would be required to affirm [DFS's] determination.
>
> However, the statute which gives [Williams] the right to a hearing before this court provides for a de novo review. "De novo" means "anew, afresh, for a second time." The same statute also provides that the "alleged perpetrator shall have the right to present testimony and to present witnesses. If the review by this court were to be confined to the reasonableness taken by [DFS], then the matter would not be "de novo," and the right of [Williams] to present testimony and to subpoena witnesses would be severely limited.

This appeal followed.

The first question on appeal concerns whether the trial court applied the proper standard of review in reversing the probable cause finding. Point I states, in pertinent part:

> [T]he court applied the wrong standard of review in that Section 210.152.5, RSMo provides for a *de novo judicial review* which the court erroneously interpreted to mean it was not limited to determining whether [DFS] had acted reasonably based on the information before it at the time of its determination. . . .

DFS suggests the trial court improperly reviewed this case under § 210.152.5 in that the trial court should have been limited to a determination of "whether or not [DFS's] finding of probable cause was supported by competent and substantial evidence." DFS asserts this review is further limited to the reasonableness of DFS's probable cause determination based solely upon the evidence before DFS at the time of the initial determination.

1. Statutory references are to RSMo 1994, except where noted otherwise.

Section 210.152 sets forth the procedures to be used after an investigation report finds probable cause of abuse or neglect of a child. Once DFS makes a probable cause finding, the alleged abuser is afforded an opportunity to have the matter reviewed by the CA/NRB pursuant to § 210.152.3. At that stage of the proceedings, the statute mandates that the board "shall sustain [DFS's] determination if such determination is supported by evidence of probable cause and is not against the weight of such evidence." § 210.152.4.

After the CA/NRB sustains a probable cause determination, § 210.152.5 affords the alleged abuser the opportunity to have the initial determination reviewed by the circuit court. Section 210.152.5 provides:

> If the alleged perpetrator is aggrieved by the decision of the [CA/NRB], the alleged perpetrator may seek *de novo judicial review* in the circuit court.... In reviewing such decisions, the circuit court shall provide the alleged perpetrator the opportunity to appear and present testimony. The alleged perpetrator may subpoena any witnesses except the alleged victim or the reporter. However, the circuit court shall have the discretion to allow the parties to submit the case upon a stipulated record. (Emphasis added).

While the trial court believed this section essentially allows it to conduct a trial de novo on the probable cause finding, DFS insists the statute mandates a more narrow review.

■ "When the General Assembly enacts legislation, it often becomes the task of the courts to interpret the meaning of the statutory language and determine the intent to be ascribed to the language used." *State v. Meggs*, 950 S.W.2d 608, 610 (Mo.App.1997). " 'In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence.' " *Clanton v. Teledyne Neosho*, 960 S.W.2d 532, 534 (Mo.App.1998 ) (quoting *State ex rel. Doe*

*Run Co. v. Brown*, 918 S.W.2d 303, 306 (Mo. App.1996)).

■ The meaning of the phrase "de novo judicial review" is at issue in the instant case. The legislature's use of the phrase "de novo judicial review" in the statute is ambiguous and subject to at least two interpretations, as indicated by the disparate meanings assigned by the trial court and DFS. No appellate case on this issue has specifically interpreted the phrase "de novo judicial review," nor has one set forth the appropriate standard under which a circuit court should review a probable cause finding pursuant to § 210.152.5.[2] It is our task to make this determination.

■ "This court ascertains the intent of the legislature from the 'language of the act, considering the words used in their plain and ordinary meaning, and [giving] meaning to the words used within the broad context of the legislature's purpose in enacting the law.' " *Younger v. Public Entity Risk Management Fund*, 957 S.W.2d 332, 336 (Mo. App.1997) (quoting *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). Accordingly, we begin our analysis by considering the words "de novo judicial review" as used in their plain and ordinary meaning.

Ordinarily statutes call for "trial de novo" or "judicial review," rather than a combination of both phrases as appears in § 210.152.5. We will examine the meaning of each phrase before we determine the standard of review the legislature intended under this statute. We first examine the term "judicial review." As defined by Black's Law Dictionary 762 (5th ed.1979), this term means "form of appeal from an administrative body to the courts for review of either the findings of fact, or of law, or of both." This definition provides little guidance. The same source defines "review" as "a reconsideration; second view or examination; revision; consideration for purposes of correction." Black's Law Dictionary 1186 (5th ed.1979).

If viewed in isolation, these definitions may lend some support to DFS's contention that

---

**2.** Although no cases exist directly on point, we are aware of *Brown v. Stangler*, 954 S.W.2d 707 (Mo.App.1997). The *Brown* court notes that in a de novo review pursuant to § 210.152.5, an alleged perpetrator "would have received a broad-

er scope of review than the Constitution requires, or is required in a contested case [under the contested case procedures set forth in the Administrative Procedure Act, chapter 536]." *Id.* at 708–09 (footnote omitted).

the trial court was simply limited to re-examining the reasonableness of the initial probable cause finding based upon the evidence then available, rather than allowing the court to make an independent probable cause determination. However, such a limited reading would ignore the use of the term "de novo" in the statute.

The trial court correctly stated that the term "de novo" is defined as "anew; afresh; a second time." Black's Law Dictionary 392 (5th ed.1979). A "de novo trial" is defined as "trying a matter anew; the same as if it had not been heard before and as if no decision had been previously rendered." Black's Law Dictionary 392 (5th ed.1979). These definitions suggest the legislature intended the trial court to conduct a fresh hearing on the probable cause finding, without being limited by the previous decisions of either DFS or the CA/NRB.

■ "When the legislature enacts a statute referring to terms which have had other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings." *Boyd v. State Bd. of Registration for Healing Arts,* 916 S.W.2d 311, 315 (Mo.App.1995). The legislature uses the term "de novo" in other statutes to mean an original proceeding in front of the court and not a mere exercise of review jurisdiction. *See, e.g.,* § 302.535.1 (governing appeal from the suspension of a driver's license). We must presume the legislature enacted § 210.152.5 with the knowledge of the general definition of "de novo." Furthermore, the legislature is presumed not to enact meaningless provisions. *Id.* The use of the words "de novo" in the statute would be rendered meaningless by accepting DFS's interpretation.

■ "In interpreting legislation, 'we must not be guided by a single sentence ..., but [should] look to the provisions of the whole law, and its object and policy.'" *Meggs,* 950 S.W.2d at 610 (quoting *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)). Section 210.152.5 allows the alleged perpetrator to appear, present testimony, and subpoena witnesses at the hearing before the trial court. These steps would be superfluous if the legislature merely intended the trial court to look at the record and evaluate the reasonableness of DFS's probable cause finding based only on the evidence gathered at the time of the initial finding.

Furthermore, in § 210.152.4, the portion of the statute that establishes the standard the CA/NRB uses to review DFS's initial review, the legislature explicitly states, "[T]he [CA/NRB] shall sustain [DFS's] determination if such determination is supported by evidence of probable cause and is not against the weight of such evidence." DFS argues the legislature intended to limit the circuit court to essentially the same standard of review, yet provides no explanation why the legislature would use such markedly different language in § 210.152.5. Again, to adopt this interpretation would require us to ignore the words "de novo" in the statute.

Based upon this analysis, we conclude the legislature did not intend to limit the trial court to reviewing the reasonableness of DFS's probable cause finding based only upon the evidence initially gathered. Rather, "de novo judicial review," as used in § 210.152.5, allows the trial court to make an independent determination of probable cause to suspect an alleged perpetrator of child abuse based upon testimony and evidence presented to the court. We hold the trial court did not apply the wrong standard of review in reversing the probable cause determination. Point I is denied.

DFS's second point on appeal asserts the trial court erred in ordering it to pay the guardian ad litem's fees of $200. DFS maintains:

[S]uch an order was an abuse of discretion and not authorized by statute in that neither fees nor costs may be taxed against the state or her agencies absent specific and express authority and Section 210.160.4, RSMo provides for the *guardian ad litem's* fee to be paid from "public funds" which has been held to mean county and not state funds.

■ DFS correctly notes the concept of "costs" did not exist at common law and is strictly a creature of statute. *In Interest of J.P.,* 947 S.W.2d 442, 444 (Mo.App.1997). "Neither fees nor costs can be taxed against

the state or a state agency absent express and specific statutory authority." *Id.* at 445.

■ Section 210.160.4, RSMo Supp.1996, authorizes the court to award reasonable fees to a guardian ad litem appointed to represent a child pursuant to certain statutes, including § 210.152, the statute under which this case was brought. Section 210.160.4 provides that "[t]he court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings or from public funds."

DFS argues that guardian ad litem fees cannot be assessed against it because it is a state agency and the phrase "public funds" refers to county funds rather that state funds.[3] While this may be true, DFS ignores the portion of the statute that provides for the fees to be "paid by any party to the proceedings." The only parties to a proceeding under § 210.152 are the alleged perpetrator and DFS. The legislature must have contemplated that DFS would be a party against whom fees could be assessed under § 210.160.4. As a party to the instant proceedings, DFS falls under the trial court's express statutory authority to assess such fees pursuant to § 210.160.4.

We cannot say the trial court erred in ordering DFS to pay guardian ad litem fees. Point II is denied. The judgment of the trial court is affirmed.

GARRISON, C.J., and BARNEY, J., concur.

---

**3.** This Court recognizes the decision in *Siedhoff v. Vajda,* 757 S.W.2d 299, 300 (Mo.App.1988), reversing the assessment of guardian ad litem fees against the Division of Family Services based upon this "public funds" rationale. The *Siedhoff* court did not address whether the assessment could be made against the DFS as a party to the proceedings. Accordingly, we do not find *Siedhoff* controlling on the instant issue.