**MOTO, INC. d/b/a Moto Mart, Respondent,**

v.

**BOARD OF ADJUSTMENT OF THE CITY OF ST. LOUIS, et al., Appellants,**

**and**

**James McGuire, III, Sharon McGuire, and Riverview Drive Improvements Association, Intervenors.**

No. ED 80346.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 27, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 22, 2002.

Application for Transfer Denied Nov. 26, 2002.

Paul R. Diekhoff, St. Louis, for City Counselor Bd. of Adj.

Thomas A. Connelly, St. Louis, for Intervenor-Riverview Dr. Improvements.

John S. Meyer, Jr, St. Louis, MO, for respondent.

Before: GEORGE W. DRAPER III, P.J., MARY R. RUSSELL, J., and MARY K. HOFF, J.

PER CURIAM.

The Board of Adjustment of the City of St. Louis ("Board of Adjustment") appeals from a judgment of the Circuit Court of the City of St. Louis reversing its denial of a conditional use permit sought by Moto, Inc., doing business as Moto Mart ("Moto Mart"), for construction of a facility that would include a tractor-trailer and automobile fueling station, convenience store, and restaurant. Because we find that Moto Mart has not satisfied the standards for issuance of a conditional use permit, we reverse the circuit court's judgment and remand for entry of a judgment affirming the Board of Adjustment's decision denying the request for a conditional use permit.

Moto Mart owns 2.88 acres of undeveloped land located at the intersection of Riverview Drive and Dunn Road in the northeastern most part of the City of St. Louis. The land is zoned as an H area commercial district. Moto Mart sought to construct a 24–hour tractor-trailer and automobile fueling station, convenience store, and restaurant.

The business would include six diesel fuel dispensers designed to refuel tractor-trailers. The project would also feature eight gasoline dispensers. Each dispenser would be double-sided such that 16 automobiles could be accommodated at any one time. The store would offer typical convenience store items including groceries, refreshments, an ATM, money orders, automotive parts, and medications. The facility would include a Hero's Restaurant offering fresh, made-to-order food, pizza, and sandwiches along with seating for customers.

The proposed business would be one of Moto Mart's largest in terms of traffic count and diesel dispensers. The diesel dispensers were a key component of the project as a Moto Mart representative testified that they made the project "economically viable," and the company was not interested in building the facility without them.

Moto Mart's parcel was attractive for the proposed facility as Riverview Drive is the first exit in Missouri after crossing over the Mississippi River from Illinois on Interstate 270 ("I–270"). This area is largely undeveloped and contains many nature areas open to the public, including the confluence of the Missouri and Mississippi Rivers, the Columbia Bottoms Conservation Area, the Riverfront Trail, the City of St. Louis Waterworks, the Lewis and Clark Monument, and the historic Old Chain of Rocks Bridge.

This area is also the site of numerous proposed scenic developments, including a major visitors and interpretive center to highlight the confluence of the Missouri and Mississippi Rivers in conjunction with the Lewis and Clark bicentennial celebration. The center is to be built by the state of Missouri. In addition, there are plans proposed by civic groups and state entities to promote and extend hiking and biking trails through the area, to construct a linear park on both sides of the Mississippi River from downtown St. Louis to the Chain of Rocks pedestrian bridge, and on to the Columbia Bottoms, and to preserve the Columbia Bottoms as a conservation area.

The administrative proceedings in this case began in early 1998 when Moto Mart filed an application for a building permit. The zoning administrator and the Board of Adjustment both denied the building per-

mit on the basis that fuel stations were prohibited uses in the H area commercial district if the station dispensed fuel to tractor-trailers. Moto Mart filed a petition for writ of certiorari in the Circuit Court of the City of St. Louis.

The circuit court found that Moto Mart's proposed business was a conditional rather than a prohibited use in an H area commercial district. Moreover, it determined that Moto Mart's proposed business, including the dispensing of fuel to tractor-trailers, fell within the definition of "motor fuel pumping station." The circuit court remanded the case to the Board of Adjustment with directions to entertain an application from Moto Mart for a conditional use permit.

Upon remand, the zoning administrator held a hearing on Moto Mart's application for a conditional use permit. After taking testimony and evidence, the zoning administrator recommended that the Board of Public Service deny the conditional use permit as the standards for its issuance, set out in City Zoning Ordinance section 26.80.010, were not satisfied. Contrary to his recommendation, the Board of Public Service granted Moto Mart a conditional use permit to construct its business.

James and Sharon McGuire, property owners adjacent to the proposed site, and the Riverview Drive Improvements Association, a group representing nearby property owners, appealed the issuance of the conditional use permit to the Board of Adjustment. The Board of Adjustment, in three separate hearings, received testimony and evidence resulting in a 1200–page legal file, including transcripts, exhibits, and demonstrative evidence.[1]

---

1. At the start of the first hearing, the Zoning Administrator entered into evidence the ex-
hibits, reports, and testimony presented at previous hearings in the matter.

In support of its position, Moto Mart presented the testimony of its former attorney, Michael Lazaroff; its current attorney, John Meyer; its president, Robert Forsyth; its vice-president of facilities, Dan Duncan; appraiser Ann McReynolds; and three area residents. In opposition to the proposed business, testimony and letters were received from Missouri State Representative Timothy Green, whose legislative district is adjacent to this site; Milton Svetanics, former member of the Board of Alderman and resident of the area; attorney John Connelley; City of St. Louis Alderwomen Dionne Flowers and Nancy Weber; Missouri State Senators Betty Sims, Paula J. Carter, and John J. Schneider; St. Louis County Councilman Jim O'Mara; City of St. Louis engineer Ron Brendel; the Missouri Tourism Commission; the Missouri Department of Conservation; the Confluence Greenway project; representatives of the Riverview Drive Improvements Association; and seven nearby residents.

After reviewing this evidence, the Board of Adjustment reversed the decision of the Board of Public Service and denied issuance of the conditional use permit. The Board of Adjustment specifically found that Moto Mart's use: (1) would not complement nor be compatible with the surrounding uses; (2) would have a negative impact on adjacent uses and community facilities such as conservation, recreation, and tourism; (3) would not contribute to, enhance, or promote the general welfare and convenience of the specific location; (4) would create a noticeable increase in noise, traffic, and litter; and (5) would establish a new standard by which other development in the immediate area would be measured in the future.

Moto Mart again filed a petition for writ of certiorari with the Circuit Court of the City of St. Louis. The court reversed the Board of Adjustment's denial of the conditional use permit, finding that it "grossly abused its discretion, acted contrary to law, and acted without substantial and competent evidence to support its actions." The court directed the Board of Adjustment to enter an order granting Moto Mart a conditional use permit. This appeal follows.[2]

On appeal, we review the findings of fact and conclusions of law of the Board of Adjustment and not the circuit court. *State ex rel. Sander v. Bd. of Adjustment of Creve Coeur*, 60 S.W.3d 14, 16 (Mo.App.2001). Our review is limited to determining "whether [the Board of Adjustment's] decision is supported by competent and substantial evidence on the whole record or is 'arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction.'" *Id.* (quoting *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City, Mo.*, 24 S.W.3d 681, 684 (Mo. banc 2000)). When determining whether substantial evidence exists to support the Board of Adjustment's decision, we view the evidence and all reasonable inferences therefrom in the light most favorable to its decision. *Id.*

The permissive and conditional uses within the H area commercial district are based on permissive and conditional uses within the more restrictive F neighborhood commercial district and G local com-

---

2. Pursuant to Rule 84.05(e), Moto Mart is designated as the appellant for briefing purposes because it was the party aggrieved by the Board of Adjustment's decision. We note that Moto Mart's statement of facts is argumentative in violation of Rule 84.04(d). Also, its points relied on do not comply with Rule 84.04(c). As we are able to discern Moto Mart's claims of error on appeal, we deny the Board of Adjustment's request to dismiss the points.

mercial and office district. Examples of permissive uses within the H area commercial district include bars and taverns, laundries, package liquor stores, and printing shops. City Zoning Ordinance chapters 26.40, 26.44, and 26.48. Examples of conditional uses in the H area commercial district include parking lots, private clubs and lodges, theaters, and motor fuel pumping stations. City Zoning Ordinance chapters 26.40, 26.44, and 26.48.

In its first point on appeal, Moto Mart argues that the Board of Adjustment erred in denying the conditional use permit as the decision denies Moto Mart its property rights by prohibiting commercial development and, in effect, rezoning the property. It claims that in denying the conditional use permit, the Board of Adjustment improperly relied on the testimony of witnesses who admitted that their motive for opposing the project was their desire for the property to remain undeveloped.

Upon careful review of the record, we find that the majority of the opposition testimony centered around the standards for issuance of a conditional use permit, and specifically whether the use, as proposed by Moto Mart, would complement or be compatible with the surrounding uses and whether adjacent uses would be negatively impacted by construction of the proposed Moto Mart facility. Opponents of the proposed business were collectively concerned that, if Moto Mart's conditional use was approved, a tractor-trailer fueling station would then become the standard for determining whether future uses were complementary or compatible, thereby resulting in a drastic change in the aesthetics of the area.

In its brief, Moto Mart highlights the testimony of two witnesses. Moto Mart claims that Peggy Rustige, president of the Riverview Drive Improvements Association, testified that she would be opposed

to implementation of several of the permissive uses in an H area commercial district on the proposed site. We find, however, that this is a mischaracterization of her testimony. When cross-examined as to whether commercial development was contrary to what she would like to see happening on the property, Rustige replied, "No, sir. That's your opinion." Furthermore, she testified that she did not oppose all commercial development of the property.

Moto Mart also highlights Sharon McGuire's testimony before the Board of Adjustment. While McGuire testified that the proposed site should be preserved as green space, the crux of her argument was that Moto Mart's proposed use was "unneeded industrialization" as diesel and motor fuel could be obtained at the next exit west of the proposed site on I–270. McGuire felt that the city should focus on ensuring the proposed site is compatible with the surrounding area in its present state as well as after the proposed developments.

■ Indeed, Moto Mart's argument would be strengthened if the Board of Adjustment had denied it a permit for a permissive commercial use. Construction of a fueling station, however, is a conditional use in the H area commercial district. While a property owner has a right to utilize permissive uses on his property, a conditional use is one that *may* be available to the property owner provided certain conditions, as set out in the zoning code, can be established. I Mo. REAL ESTATE PRACTICE section 20.15 (MoBar 4th ed.2000) (emphasis added). Moto Mart's alleged right to construct a fuel station was contingent upon whether the standards for a conditional use permit were satisfied, which we next address.

We find the Board of Adjustment's denial of Moto Mart's request for a conditional use permit does not prohibit all commercial development and does not amount to a more restrictive zoning classification for this piece of property. Rather, it was this particular use of the property as a tractor-trailer and automobile fueling station, convenience store, and restaurant that was rejected. Point one is denied.

In its second point on appeal, Moto Mart alleges that there was not competent and substantial evidence to support the Board of Adjustment's finding that Moto Mart failed to meet the standards for a conditional use permit. City Zoning Ordinance section 26.80.010(E) sets the standards for issuance of a conditional use permit:

The Board of Public Service shall not approve a conditional use unless the Board finds that the use conforms to the following standards:

1. The use will not be detrimental to the public health, safety, morals or general welfare;

2. The use will not cause serious injury to the neighboring property by hindering use or reducing or impairing property values;

3. The use will contribute to, enhance, and promote the general welfare and convenience of the specific location;

4. The use will complement or be compatible with the surrounding uses and will not have a negative impact on adjacent uses or community facilities; and

5. The use shall, in all other respects, conform to the applicable zoning regulations and standards, including without limitation the particular regulations and standards stated for particular conditional uses in the various zoning districts.

After reviewing the voluminous record provided us in a light most favorable to the Board of Adjustment's decision, we find that it could properly determine that the proposed use did not conform to all of the standards set out above. Specifically, there was competent and substantial evidence to support a finding that the proposed use would not complement or be compatible with surrounding uses and that the proposed use would create a noticeable increase in traffic and noise.

Numerous witnesses testified about the character of the area surrounding the proposed site as well as current and proposed developments. At the time of the hearing, the area surrounding the proposed site was undeveloped. The Columbia Bottoms Conservation Area, the confluence of the Missouri and Mississippi Rivers, the Old Chain of Rocks Bridge, and the Lewis and Clark Monument are all within a two-mile radius of the proposed site. Visitors to the area are frequent, including hikers and bikers who take advantage of parks, trails, and wildlife areas in the vicinity of the proposed fuel station.

Given the importance of preserving the natural habitat, several witnesses testified regarding plans to develop compatible attractions in the area. Representative Green testified regarding a $2.8 million pledge from the state of Missouri to build a visitors and interpretive center to highlight the confluence of the Missouri and Mississippi Rivers in conjunction with the Lewis and Clark Bicentennial celebration. The proposed site of the visitors center is at the intersection of Riverview Drive and I–270 near the Moto Mart property. Furthermore, Representative Green testified that the Missouri Department of Conservation had purchased the Columbia Bottoms with the intention of keeping it a conservation area. The Conservation De-

partment plans to build a "gazebo-type facility" as well as hiking and biking trails in the area so that visitors can view the confluence, while at the same time preserving the wildlife and waterfowl in the area.

Laura Cohen testified on behalf of the Confluence Greenway project, which is a collaborative effort of not-for-profit organizations and public agencies to provide public access to natural resources. The Confluence Greenway project was working with numerous Missouri state entities including the Department of Conservation, the Department of Natural Resources, the Division of Tourism, and the Department of Transportation to develop a master plan for the area, which would include building the visitors and interpretive center, promoting and extending trails through the area, and designating a linear park on both sides of the Mississippi River from downtown St. Louis to the Old Chain of Rocks pedestrian bridge and the Columbia Bottoms.

▆▆▆▆ A letter from the Missouri Tourism Commission was entered into the record.[3] The commission currently has a center welcoming travelers into Missouri that is adjacent to the Moto Mart site. The letter discussed plans for development of a larger interactive education center combining the tourism center with nearby environmental and historic attractions. The letter concluded that the plans and investment in the area might be jeopardized by the approval of the Moto Mart facility, especially if the health, safety, or convenience of visitors to the area would be compromised.

We agree with Moto Mart that the evidence before the Board of Adjustment showed that many of these plans were in the early stages of development. There was nothing in the record, however, to indicate that these development plans were not or could not be completed as scheduled. The construction of a fuel station and convenience store does not complement nor is it compatible with this area as it currently exists. The development plans for this area only further emphasize the incompatibility.

Moto Mart argues that we should consider both the existing as well as the permitted uses within the H area commercial district when determining the compatibility of this proposed use. City Zoning Ordinance section 26.80.010(E) does include among its five standards that the proposed use should conform to the "applicable zoning regulations and standards." City Zoning Ordinance section 26.80.010(E)(5). This standard, however, is only one of the five standards of the ordinance that must be satisfied for issuance of a conditional use permit. Among other standards of City Zoning Ordinance section 26.80.010(E) is that the proposed use also complement and be compatible with surrounding uses. City Zoning Ordinance section 26.80.010(E)(4). Moto Mart's proposed use does not complement nor is it compatible with the bluffs, rivers, trails, and bridges that dominate this area.

In addition, City Zoning Ordinance section 26.48.015 states:

> The purpose of the H area commercial district is to establish and preserve

---

**3.** Moto Mart alleges that this letter is hearsay and, therefore, it is not competent evidence. Statements in violation of evidentiary rules do not qualify as competent and substantial evidence if a proper objection is made. *Concord Publ'g House, Inc. v. Dir. of Revenue*, 916 S.W.2d 186, 195 (Mo. banc 1996). Probative evidence, however, received without objection in a contested case must be considered in administrative hearings. *Id.* When, as here, the objection is not timely, this constitutes a waiver of the claim that the evidence is inadmissible. *Liszewski v. Union Elec. Co.*, 941 S.W.2d 748, 752 (Mo.App.1997).

general commercial areas consisting of shopping centers and commercial strips where customers reach individual business establishments primarily by automobile. This district is intended to provide diversified types of goods and services to a large consumer population coming from an extensive area. Regulations of this district are to facilitate the use of heavily trafficked areas suitable for the operation of businesses catering to the general public, which does not materially detract from nearby residential uses.

The purpose of the H area commercial district, therefore, is to establish and preserve commercial areas such as shopping centers and commercial strips, to cater to the consumer population traveling to this district by automobile, and to protect nearby residential uses. Although the automobile fueling station and convenience store components of Moto Mart's proposed facility may promote the general purposes of the H area commercial district, the diesel fuel pumps, an admittedly vital component of the Moto Mart facility, will thwart the general purpose of the district. The large volume of interstate trucking business that Moto Mart expects to receive from tractor-trailers refueling at the proposed facility would not be compatible with the consumers attracted to this area or the nearby residential areas.

Finally, the Board of Adjustment received testimony from Milton Svetanics, a former member of the Board of Alderman for 12 years and chairman and drafter of the zoning code. He testified that it was the long held public policy of the City of St. Louis that fueling stations servicing tractor-trailers were not permitted in the H area commercial district, even as a conditional use. Rather, fueling stations servicing tractor-trailers were heavy industrial uses appropriate in the K industrial district only. We note that, in the circuit court's original judgment, it found that the zoning code makes no distinction between motor fuel pumping stations servicing automobiles and those servicing tractor-trailers.

There was also substantial and competent evidence that the proposed use would not conform to the first three standards of City Zoning Ordinance section 26.80.010(E) in that it would create a noticeable increase in traffic and noise. Numerous witnesses testified regarding the increase in tractor-trailer traffic and noise that would accompany the construction of a tractor-trailer and automobile fueling station. The Missouri Department of Transportation conducted a study of the traffic count for the heaviest 12 hours and the current traffic operations at the proposed site. The department determined that development of the Moto Mart facility would create a 50 percent increase in the traffic at the intersection, or approximately 1500 additional vehicles. The department also indicated that "anytime there is a mix [of] vehicular and pedestrian/bike traffic there will be safety concerns." [4]

The zoning administrator testified that he observed the tractor-trailer traffic at the closest interchange, which is located at I–270 and Lilac Avenue approximately two miles west of the proposed site. This interchange contains two fueling stations that are similar to Moto Mart's proposed

---

4.  Moto Mart argues that this letter is hearsay and, therefore, it is not competent evidence. Hearsay statements do not qualify as competent and substantial evidence, if a proper objection is made. *Concord Publ'g House,* 916 S.W.2d at 195. Probative evidence, however, received without objection in a contested case must be considered in administrative hearings. *Id.* When, as here, the objection is not timely, this constitutes a waiver of the claim that the evidence is inadmissible. *Liszewski,* 941 S.W.2d at 752.

facility. The zoning administrator described the amount of tractor-trailer traffic at that interchange as "exceptionally heavy" such that crossing the street was "dangerous."

Conflicting evidence was presented by Moto Mart's representatives who testified that they expected approximately five or six tractor-trailers to utilize their facility per hour. The zoning administrator, however, testified that an employee of one of the fueling stations at I–270 and Lilac Avenue indicated that it serviced 12 tractor-trailers per hour.[5] In addition, the homeowner closest to the proposed site testified, without objection, about a conversation he had with an employee of one of the facilities at I–270 and Lilac Avenue. The employee told him that 40 to 50 tractor-trailers were served per hour and that the station across the street received at least half of that amount.

Given that the proposed facility would be located at the first Missouri exit off of I–270 from Illinois, Moto Mart is clearly intending to entice considerable business away from the stations located at the second exit off of I–270 at Lilac Avenue. This proposed facility would also be one of Moto Mart's largest in terms of traffic count and diesel dispensers. Furthermore, Moto Mart is expecting to earn substantial profits from the dispensing of diesel fuel given that its representatives stated that the business would not be profitable without it.

One resident who lives close to the proposed site on Dunn Road testified against the granting of the conditional use permit. She stated that tractor-trailers were consistently parked on Dunn Road each night, as the rest stop/welcome center located there closed its gates at 5:00 p.m. While there were "No Parking" signs posted, the resident testified that the signs were not enforced. She was opposed to the construction of the Moto Mart facility as she did not want to attract more tractor-trailers to the area. Another Dunn Road resident testified that two or three tractor-trailers were parked on Dunn Road during the day and at night and would often drive by her house and turn around in her yard. The alderwoman representing this ward of the city testified before the Board of Adjustment that she had received constituent complaints regarding tractor-trailers encroaching on personal property and parking on Dunn Road.

Finally, numerous area residents testified about their concerns that construction of the Moto Mart facility would exacerbate the existing traffic problems in the area. One resident, a former firefighter, testified that he frequently responded to accidents between cars and tractor-trailers in the area.[6] We find there was substantial and

---

**5.** While Moto Mart's attorney objected to the statements of the employee as hearsay, the attorney later incorporated the employee's figure into his cross-examination of another witness, thereby abandoning his objection. *See Vermillion v. Burlington N. R.R. Co.,* 813 S.W.2d 947, 950 (Mo.App.1991) (finding that an objection to the admission of evidence is waived when the same or similar evidence is elicited by the objector). *See also Alvey v. Sears, Roebuck & Co.,* 360 S.W.2d 231, 234 (Mo.1962).

**6.** Moto Mart argues that the testimony of residents living more than one mile from the proposed site should be discounted. In addition, it contends that the testimony of residents who are unable to see or who are shielded from seeing the site from their homes should also be discounted. We find, however, that Moto Mart's recommendation of who will and will not be affected by the proposed use is too restrictive. Potential traffic and noise problems from the large diesel tractor-trailers traveling to and from the 24–hour fueling station and convenience store will not be confined solely to landowners within viewing distance of the proposed 2.88 acre Moto Mart facility.

competent evidence before the Board of Adjustment to prove that Moto Mart's proposed use would create a noticeable increase in traffic and noise.

■ The Board of Adjustment did not err in denying Moto Mart's conditional use permit as there was competent and substantial evidence to support a finding that the proposed use would not complement or be compatible with surrounding uses. City Zoning Ordinance section 26.80.010(E)(4). Moreover, there was evidence that the proposed use would create a noticeable increase in traffic and noise, thereby failing to meet the first three standards set out in City Zoning Ordinance section 26.80.010(E). Moto Mart, therefore, has not met the standards for issuance of a conditional use permit. Point two is denied.

■ Having determined that substantial and competent evidence supports the Board of Adjustment's denial of the conditional use permit, we need not consider Moto Mart's final point that it presented sufficient, competent, credible, and material evidence to support issuance of a conditional use permit. If substantial and competent evidence supports the findings of the Board of Adjustment, we will not substitute our discretion, even if different factual findings could have been made in reaching an opposite result. *Sander*, 60 S.W.3d at 17; *Ogawa v. City of Des Peres*, 745 S.W.2d 238, 243 (Mo.App.1987). Point three is denied.

We reverse the circuit court's judgment and remand for entry of a judgment affirming the Board of Adjustment's decision denying the conditional use permit.