**MISSOURI PROSECUTING ATTORNEYS AND CIRCUIT ATTORNEYS RETIREMENT SYSTEM, an agency of the State of Missouri, Plaintiff–Appellant,**

v.

**PEMISCOT COUNTY, Charles Moss, Wendell Hoskins, Sr., and David Wilkerson, Defendants–Respondents.**

No. 27325.

Missouri Court of Appeals, Southern District, Division Two.

March 28, 2007.

James E. Spain, Kristi J. Booker, Spain, Merrell & Miller, LLC, Poplar Bluff, for Appellant.

Wendell L. Hoskins, Caruthersville, for Respondents.

PHILLIP R. GARRISON, Judge.

The Missouri Prosecuting Attorneys and Circuit Attorneys Retirement System ("PACARS") filed a petition for writ of mandamus against Pemiscot County and its County Commissioners, Charles Moss, Wendell Hoskins, Sr. and David Wilkerson (collectively referred to as "Defendants"). In its petition, PACARS sought to compel Defendants to pay PACARS an amount it believed was required by Section 56.807.5(3).[1] Faced with competing motions for summary judgment, the trial court entered summary judgment in favor of Defendants, which PACARS now appeals. We reverse and remand.

The material facts presented for the trial court's consideration in the competing motions for summary judgment were undisputed, and both PACARS and Defendants agree this appeal presents an issue of law for our determination. Therefore, our standard of review is de novo. *Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895, 896 (Mo.App. S.D.2004). "We do not defer to the trial court's order granting summary judgment. Rather, our job is to decide whether, as the party moving for summary judgment, Defendant[s] [were] entitled to judgment as a matter of law." *Id.* at 896–97 (internal citations omitted).

The undisputed material facts are as follows: Prior to August 1998, the prosecuting attorney in Pemiscot County, a third class county, was a part-time position. In August 1998, the voters of that county voted to make the position full time. Mike Hazel ("Hazel"), who had been the part-time prosecutor, was elected to the full-time position in November 1998.

As an elected prosecuting attorney, Hazel is a member of PACARS, subject to its retirement system. Section 56.807, governing the amount counties must pay to PACARS to fund the retirement system for prosecutors, provides, in relevant part, as follows:

1. Beginning August 28, 1989, and continuing monthly thereafter until August 27, 2003, the funds for prosecuting attor-

---

1. All statutory references are to RSMo Cum. Supp. (2005), unless otherwise indicated.

neys and circuit attorneys provided for in subsection 2 of this section shall be paid from county or city funds.

2. Beginning August 28, 1989, and continuing monthly thereafter until August 27, 2003, each county treasurer shall pay to the system the following amounts to be drawn from the general revenues of the county:

(1) *For counties of the third and fourth classification except as provided in subdivision (3) of this subsection, three hundred seventy-five dollars;*

. . . .

(3) For counties of the first classification, *counties which pursuant to section 56.363 elect to make the position of prosecuting attorney a full-time position after August 28, 2001,* or whose county commission has elected a full-time retirement benefit pursuant to subsection 3 of section 56.363, and the city of St. Louis, *one thousand two hundred ninety-one dollars and sixty-seven cents.*

. . . .

(emphasis added). Subsection 5 was added to the statute in 2003 and reads as follows:

5. Beginning August 28, 2003, each county treasurer shall pay to the system the following amounts to be drawn from the general revenues of the county:

(1) *For counties of the third and fourth classification except as provided in subdivision (3) of this subsection, one hundred eighty-seven dollars;*

. . . .

(3) For counties of the first classification, *counties which pursuant to section 56.363 elect to make the position of prosecuting attorney a full-time position after August 28, 2001,* or whose county commission has elected a full-time retirement benefit pursuant to

subsection 3 of section 56.363, and the city of St. Louis, *six hundred forty-six dollars.*

Section 56.363.3 provides, in relevant part, as follows:

In counties that, prior to August 28, 2001, have elected pursuant to this section to make the position of prosecuting attorney a full-time position, the county commission may at any time elect to have that position also qualify for the retirement benefit available for a full-time prosecutor of a county of the first classification. . . . Such election shall also obligate the county to pay into the Missouri prosecuting attorneys and circuit attorneys' system retirement fund the same retirement contributions for full-time prosecutors as are paid by counties of the first classification.

Pursuant to the amount specified in Section 56.807.2(1), Pemiscot County has paid $375 per month into PACARS, since July 1993. This is apparently true, even though, under its theory that its voters did not elect to make the prosecutor's position a full-time one after August 28, 2001, and its county commission had not elected to have the position qualify for the retirement benefits available for a full-time prosecutor of a first class county (*see* Sections 56.807.5(3) and 56.363.3), the required contributions for prosecutors of third class counties after August 28, 2003, has been $187.

Because Pemiscot County elected to make their prosecutor a full-time position, PACARS believed that the County should pay $646 per month pursuant to Section 56.807.5(3). After Defendants refused PACARS demands, PACARS filed a petition for writ of mandamus seeking to compel Defendants to pay the difference between what it had paid and the $646 monthly amount claimed ($4,336). Defendants filed a motion for summary judgment, arguing

that, under its interpretation of Section 56.807, it was not required to pay PACARS the same amount as first class counties, because Pemiscot County had elected to make the position of prosecuting attorney a full-time position before August 28, 2001, and the county commission had not affirmatively chosen to pay the amounts required of first class counties. PACARS filed a motion for summary judgment of its own, arguing a different interpretation of Section 56.807, and alleging that under Defendants' interpretation, Section 56.807 violated the equal protection clause of the United States and Missouri Constitution. The parties agreed that there were no disputed issues of fact, and that resolution of the case was a matter of statutory construction.

The trial court entered summary judgment in favor of Defendants. In its written judgment, it incorporated findings it recited in a docket entry which read, in pertinent part, as follows:

> [T]here are no uncontroverted material facts at issue in this cause. That in reading 56.087[sic][ ] together with 56.363.3[ ] the Court finds that the legislative intent is clear that the legislature did not intend to require counties that had elected 'full-time' prosecuting attorneys prior to August 28, 2001[,] to have that position qualify for the retirement benefits available for a full-time prosecutor of a first class county absent affirmative action by the county commission.

The trial court also said the following:

> The Court has entered these Orders based upon the Court's interpretation of sections 56.807 and 56.363.3[ ]. The Court finds that the action and intent of the legislature have been to create, intentionally or not, a small group of 'second class' prosecuting attorneys in the state of Missouri. It seems absurd to the Court that those prosecuting attor-

neys from counties who elected to have full[-]time prosecutors prior to August 28, 2001[,] shall be treated differently from those where similar action was taken subsequent to that date. Reluctantly, it is this Court's opinion that only action by the legislature or the Pemiscot County Commission can cure this injustice.

This appeal followed.

■ PACARS brings two points on appeal. For the sake of clarity, we will first address its second point, which reads as follows:

> The trial court erred in granting summary judgment in favor of [Defendants] and denying [PACARS'] motion for summary judgment because the use of "after August 28, 2001" in [Section] 56.807 refers to when the payments were to begin, not that payments were only to be paid to full[-]time prosecutors elected after August 28, 2001[,] in that the *only* reasonable construction of the statute and the intent of the legislature was that all full[-]time prosecuting attorneys— whether elected before or after August 28, 2001—are entitled to full[-]time benefits.

(emphasis in original). We disagree.

■ We first note that PACARS' petition sought relief in the form of a writ of mandamus. A writ of mandamus is an appropriate remedy only where a party has a clear duty to perform a certain act. *Maxwell v. Daviess County*, 190 S.W.3d 606, 610 (Mo.App. W.D.2006). The purpose of mandamus is to enforce an existing right by requiring the performance of a duty already defined by the law, and it may not be used to establish new rights. *Id.* We must therefore determine whether Defendants have a clear duty under existing law to pay a greater amount to PACARS.

The issue presented in this point on appeal requires this Court to interpret the language of Sections 56.807 and 56.363.3. Our primary role, when interpreting a statute, is to determine the intent of the legislature and, whenever possible, give effect to that intent. *Keling v. Keling*, 155 S.W.3d 830, 833 (Mo.App. E.D.2005). "In ascertaining legislative intent, the words present in the statute are to be considered in their plain and ordinary meaning." *Id.* Where the language of a statute is clear and unambiguous, we will give effect to the language as written, and we will not resort to statutory construction. *Id.*

Here, the statute at issue is clear and unambiguous. Therefore, we need not resort to statutory construction. Pursuant to Section 56.807, there are three circumstances where a county must pay to PACARS the higher monthly retirement rates of $1,291.67 (from August 28, 1989, to August 27, 2003) and $646 (from August 28, 2003, to the present): (1) the county is of the first classification; (2) pursuant to Section 56.363.1, the county has elected to make the position of prosecuting attorney a full-time position after August 28, 2001; or (3) the county has elected to make the position of prosecuting attorney a full-time position before August 28, 2001, but, pursuant to Section 56.363.3, has elected to have the position of full-time prosecutor also qualify for the retirement benefit available for a prosecutor of a first class county.[2] Sections 56.807.2 and 56.807.5.

In this case, the parties are in agreement that Pemiscot County is a third class county that elected to make its prosecutor a full-time position before August 28, 2001. The parties also agree that at no time has Pemiscot County elected to have the position of prosecutor qualify for the retire-ment benefit available for a prosecutor of a first class county pursuant to Section 56.363.3. Therefore, pursuant to Section 56.807, Pemiscot County was only required to pay to PACARS a monthly contribution of $375 through August 27, 2003, and $187 from August 28, 2003, to present. Sections 56.807.2 and 56.807.5.

PACARS argues that "[t]he only reasonable construction of the words of the statute is that the payments were to take effect after August 28, 2001[,] for counties that had elected pursuant to [Section] 56.363 to make the prosecuting attorney position a full[-]time position, not that counties who had waited until after this time period were the only ones responsible for paying the increased amounts." Not only is PACARS' construction inconsistent with the plain and ordinary meaning of the statute, it also ignores Section 56.363.3, which provides that counties, such as Pemiscot County, that have elected to make the position of prosecutor a full-time position before August 28, 2001, may also elect to have that position qualify for the retirement benefit available for a prosecutor of a first class county. PACARS' construction of Section 56.807 renders Section 56.363.3 meaningless. "[T]he legislature is presumed not to enact meaningless provisions." *Williams v. State, Dept. of Soc. Serv., Div. of Family Serv.*, 978 S.W.2d 491, 494 (Mo.App. S.D.1998).

 We also note that for us to accept PACARS' construction of Section 56.807, we would be required to effectively add language to the statute instructing that "payments [are] to take effect after August 28, 2001[,]" even though it does not appear in Section 56.807.2 or Section 56.807.5. We avoid interpreting statutes

---

2. The City of St. Louis is also required to pay PACARS the greater amount. Sections 56.807.2 and 56.807.5.

in a manner that impermissibly adds language to the statute. *BHA Group Holding, Inc. v. Pendergast,* 173 S.W.3d 373, 379 (Mo.App. W.D.2005). We cannot add to a statute provisions which do not appear explicitly or by implication from the words in the statute. *State Dep't of Soc. Serv., Div. of Med. Serv. v. Brundage,* 85 S.W.3d 43, 49 (Mo.App. W.D.2002). Here, the language necessary to support PACARS' construction does not appear explicitly or by implication from the words in the relevant statutory provisions.

Section 56.807 clearly and unequivocally provides that third class counties are required to pay to PACARS the same monthly amount as first class counties, only if the county has elected to make their prosecutor position a full-time position after August 28, 2001. Section 56.363.3 allows for those counties who have made their prosecutor position full-time before August 28, 2001, to choose to have their prosecutor receive the same retirement benefits as those in first class counties by paying in the same amounts as those counties. Pemiscot County elected that their prosecutor position be a full-time position before August 28, 2001, and has not elected that their prosecutor receive the retirement benefits of a prosecutor in a first class county. Therefore, Pemiscot County is not required to pay PACARS the amount owed by first class counties. The trial court did not err in its interpretation of the applicable statutes. This point is denied.

We now turn to PACARS' first point which reads as follows:

> The trial court erred in granting summary judgment in favor of [Defendants] and denying [PACARS'] motion for summary judgment because the trial court's ruling raises equal protection concerns under the Missouri and United States Constitution in that the ruling results in

disparate treatment of the prosecuting attorney in Pemiscot County with similarly situated full[-]time prosecuting attorneys and such interpretation is not rationally related to any legitimate state interest.

Although neither party has raised the issue, this Court has the duty to address its jurisdiction *sua sponte.* *G.Q. Gentlemen's Quarters, Inc. v. City of Lake Ozark,* 83 S.W.3d 98, 100 (Mo.App. W.D. 2002). "The Missouri Supreme Court has exclusive appellate jurisdiction in cases involving the validity of a statute or provision of the constitution of this state." *Id.;* see MO. CONST. art. V, § 3. However, "[t]o vest appellate jurisdiction with the Supreme Court on a constitutional issue, the attack on the constitutionality of the statute must be that whatever it means and under any construction of which it is susceptible, it is unconstitutional." *Margulis v. P & M Consulting, Inc.,* 121 S.W.3d 246, 248 n. 1 (Mo.App. E.D.2003)(internal citations and quotations omitted). "To say that a statute would be unconstitutional if construed in a certain manner does not meet the requirement." *Whitaker v. City of Springfield,* 889 S.W.2d 869, 875 (Mo.App. S.D.1994) (citations and quotations omitted).

PACARS' equal protection challenge to Section 56.807 is conditional depending on the manner in which the statute is construed. Such a challenge does not vest exclusive appellate jurisdiction with the Supreme Court of Missouri on the constitutional issue. *See Margulis,* 121 S.W.3d at 248 n. 1; *and Whitaker,* 889 S.W.2d at 875. Therefore, this Court has jurisdiction to address PACARS' equal protection argument.

Next, we note that in order to preserve a constitutional question for appellate review, a party is required to: (1) raise the question at the first available

opportunity; (2) specifically designate the constitutional provision alleged to have been violated; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout. *Missouri Highway and Trans. Com'n v. Merritt,* 204 S.W.3d 278, 284 (Mo.App. E.D.2006). Additionally, a constitutional challenge to a statute must not only have been presented to the trial court, but the trial court must have ruled thereon. *Id.* The purpose for this requirement is to give the trial court an opportunity to fairly identify and rule on the issues and to prevent surprise to the opposing party. *Id.*

■ Here, PACARS properly preserved for appeal its constitutional challenge of Section 56.807 on equal protection grounds. However, the issue was not ruled on by the trial court. "When a constitutional challenge is made to a statute which, if valid, is determined to be applicable and decisive, as in the present case, the court must decide the issue of validity." *Estate of McCluney,* 871 S.W.2d 657, 659 (Mo.App. W.D.1994). Without having determined, as a necessary step, the challenged validity of Section 56.807, the trial court cannot decide the ultimate issue between the parties. *Id.*

If Section 56.807 is determined to be unconstitutional, the foundation of the trial court's decision would collapse. *Id.* The trial court may not avoid deciding the issue of the constitutional validity of Section 56.807. *Id.*

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

BATES, C.J., and LYNCH, J., concur.