**MISSOURI PROSECUTING ATTORNEYS AND CIRCUIT ATTORNEYS RETIREMENT SYSTEM, an Agency of the State of Missouri, Respondent,**

v.

**PEMISCOT COUNTY, et al., Appellants.**

**No. SC 88956.**

Supreme Court of Missouri, En Banc.

June 30, 2008.

Wendell L. Hoskins, II, Joshua D. Underwood, Caruthersville, for appellants.

Kristi Grobe Booker, James E. Spain, Poplar Bluff, for respondent.

**STEPHEN N. LIMBAUGH, JR.,** Judge.

Pemiscot County and its county commissioners, Charles Moss, Wendell Hoskins, Sr., and David Wilkerson, appeal the entry of summary judgment in favor of the Missouri Prosecuting Attorneys and Circuit Attorneys Retirement System (PACARS), which petitioned for a writ of mandamus to compel the County to pay additional monies into the PACARS retirement fund. The trial court held that the statutory scheme set out in chapter 56[1] for the compensation of prosecuting attorneys violated the Equal Protection Clauses of the federal and state constitutions. Because this case presents a challenge to the constitutional validity of these statutes, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3. The judgment is reversed.

The material facts of this case are undisputed. Before August 1998, the position of prosecuting attorney for Pemiscot County, a third class county, was part-time. On August 4, 1998, the citizens of Pemiscot County voted to make the position full-time pursuant to section 56.363.1.[2] However, the county commission has declined to "elect to have that position also qualify for the retirement benefit available for a full-time prosecutor of a county of the first classification," which is its option under section 56.363.3.[3]

Section 56.807 establishes the amount counties, depending on their classification,

1. All statutory references are to RSMo Supp. 2005, unless otherwise indicated.

2. Section 56.363.1, RSMo Supp.1997, in relevant part, provides:

 The county commission of any county may on its own motion ... submit to the voters at a general or special election the proposition of making the county prosecutor a full-time position. . . . If a majority of the voters voting on the proposition vote in favor of making the county prosecutor a full-time position, it shall become effective upon the date that the prosecutor who is elected at the next election subsequent to the passage of such proposal is sworn into office.

3. Section 56.363.3, states:

 In counties that, prior to August 28, 2001, have elected pursuant to this section to make the position of prosecuting attorney a full-time position, the county commission *may* at any time elect to have that position also qualify for the retirement benefit available for a full-time prosecutor of a county of the first classification. Such election shall be made by a majority vote of the county commission and once made shall be irrevocable. When such an election is made, the results shall be transmitted to the Missouri prosecuting attorneys and circuit attorneys' retirement system fund, and the election shall be effective on the first day of January following such election. Such election shall also obligate the county to pay into the Missouri prosecuting attorneys and circuit attorneys' system retirement fund the same retirement contributions for full-time prosecutors as are paid by counties of the first classification.
 (emphasis added).

were required to pay into the retirement fund for prosecuting attorneys from August 28, 1989, to August 27, 2003. That section states, in relevant part:

1. Beginning August 28, 1989, and continuing monthly thereafter until August 27, 2003, the funds for prosecuting attorneys ... shall be paid from county or city funds.

2. Beginning August 28, 1989, and continuing monthly thereafter until August, 27, 2003, each county treasurer shall pay to the system the following amounts to be drawn from the general revenues of the county:

(1) For counties of the third and fourth classification, except as provided in subdivision (3) of this subsection, three hundred and seventy-five dollars.

. . .

(3) For counties of the first classification, counties which pursuant to section 56.363 elect to make the position of prosecuting attorney a full-time position after August 28, 2001, or whose county commission has elected a full-time retirement benefit pursuant to subsection 3 of section 56.363, and the city of St. Louis, one thousand two hundred ninety-one dollars and sixty-seven cents.

Section 56.807.5 then details the amounts counties, depending on their classification, are to pay from August 28, 2003 to present:

5. Beginning August 28, 2003, each county treasurer shall pay to the system the following amounts to be drawn from the general revenues of the county:

(1) For counties of the third and fourth classification except as provided in subdivision (3) of this subsection, one hundred eighty-seven dollars;

. . .

(3) For counties of the first classification, counties which pursuant to section 56.363 elect to make the position of prosecuting attorney a full-time position after August 28, 2001, or whose county commission has elected a full-time retirement benefit pursuant to subsection 3 of section 56.363, and the city of St. Louis, six hundred forty-six dollars.

Under these provisions, Pemiscot County is statutorily required to pay into the retirement fund for its prosecuting attorney only $187.00 per month as of August 2003. However, the County did not alter its contribution in PACARS after voting to make the position of prosecuting attorney a full-time position in 1998, and it has since July 1993 in fact paid $375.00 into PACARS per month.

In 2005, based on the provisions of 56.807.5, PACARS petitioned for a writ of mandamus to compel Pemiscot County to pay an additional $4,336.00 into the retirement fund—the difference between the $375.00 paid per month and the $646.00 per month allegedly owed under section 56.807 once the prosecuting attorney position was made full-time. Thereafter, Pemiscot County filed a motion for summary judgment, which the trial court granted, and the PACARS appealed to the court of appeals. The court of appeals issued its decision upholding the trial court's construction of the relevant statutes, but reversed and remanded the case on the basis that the trial court did not rule on PACARS's claim that the statutory scheme for prosecutors' retirement compensation under chapter 56 violated the Equal Protection Clause of the federal and state constitutions. *Mo. Prosecuting Atty's v.*

*Pemiscot County,* 217 S.W.3d 393 (Mo. App.2007).

The basis for the equal protection claim is the disparity between the statutory contributions for prosecuting attorneys in third-class counties whose positions were made full-time *before* August 28, 2001, as is the case here, and the statutory compensation for prosecuting attorneys in third-class counties whose positions were made full-time *after* August 28, 2001. Since 2003, prosecuting attorneys in the former category are entitled only to $187.00 per month in retirement contributions, while prosecuting attorneys in the latter category are entitled to $646.00 per month.

On remand, the trial court entered a judgment and order reversing its initial judgment and granting PACARS's motion for summary judgment, ruling that the disparity in retirement compensation for prosecutors who became full-time before August 28, 2001, and those who became full-time after August 28, 2001, was not rationally related to any legitimate state purpose and was, therefore, an unconstitutional violation of the Equal Protection Clauses. In addition, the trial court specifically ordered that:

> * Deemed unconstitutional, subsection 3 be stricken from section 56.363, RSMo.
> * Deemed unconstitutional, *"after* August 28, 2001, or whose county commission has elected a full-time retirement benefit pursuant to subsection 3 of section 56.363," be stricken from subdivision 3 of subsection 2 of section 56.807, RSMo and subdivision 3 of subsection 5 of section 56.807, RSMo.

This appeal followed.

 The standard of review on appeal of summary judgment is *de novo,* and summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Fin.* *Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

 This Court's review begins with the recognition that all statutes are "presumed to be constitutional and will not be held unconstitutional unless [they] clearly and undoubtedly contravene[ ] the constitution." *United C.O.D. v. State,* 150 S.W.3d 311, 313 (Mo. banc 2004). A statute will be enforced "unless it plainly and palpably affronts fundamental law embodied in the constitution." *Id.* Doubts will be resolved in favor of the constitutionality of the statute. *Id.*

 In terms of equal protection, a statute that neither operates to the disadvantage of a suspect class nor impinges on a fundamental right will withstand constitutional challenge if the classification bears some rational relationship to a legitimate state purpose. *Kohring v. Snodgrass,* 999 S.W.2d 228, 231–32 (Mo. banc 1999). Here, PACARS makes no claim the classifications set forth in chapter 56 impact a suspect class, nor that they impinge upon a fundamental right; thus, only the rational basis test applies.

 The rational basis test requires only that the challenged law bear some rational relationship to a legitimate state interest. To prevail under that test, PACARS must show that the classifications set forth in challenged statutes "[do] not rest upon any reasonable basis and [are] purely arbitrary." *Miss Kitty's Saloon, Inc. v. Mo. Dep't of Revenue,* 41 S.W.3d 466, 467 (Mo. banc 2001). In that determination, this Court will not substitute its judgment for that of the legislature as to "the wisdom, social desirability or economic policy underlying a statute." *Kohring,* 999 S.W.2d at 233 (internal citation omitted). In the final analysis, a classification is constitutional if any set of facts can be

reasonably conceived to justify it. *Miss Kitty's Saloon*, 41 S.W.3d at 467.

██ In this case, a rational basis for the disparity is evident in view of the several amendments to section 56.807. Before August 28, 2001, the citizens of third-class counties voting to make the county prosecutor a full-time position did so when the county contribution to the retirement fund was set at $375 per month pursuant to section 56.807.2(1). However, in 2001, section 56.807.2 was amended by the addition of a clause to subdivision (3) so that the county contribution for full-time prosecuting attorneys was increased to $1291.67 "for those counties which pursuant to section 56.363 elect to make the position of prosecuting attorney a full-time position after August 28, 2001...." S.B. 290, 91st Gen. Assem., 1st Reg. Sess. (Mo. 2001), *reprinted in* 2001 Mo. Laws 1232. By including the August 28, 2001, cutoff to the amendment, the legislature apparently concluded that the voters in the counties approving full-time prosecutor status before that date could not have made an informed choice given the substantial increase in the county contribution that was to come after that date. And, given that increase, it may well be that the voters would have withheld their approval. In any event, it is clear that inclusion of the August 28, 2001, cutoff reflects the legislative intent to impose upon the counties no greater obligation than that which the voters approved, and that, indeed, is a rational basis for the disparity.

It should be noted, too, that the statutory scheme was not brought to its current form until a 2003 amendment to section 56.807—adding subsection 5, which reduced the amount of the county contribution to $187 per month for prosecutors who became full-time before August 28, 2001, and to $646 per month for prosecutors who became full-time after August 28, 2001.

S.B. 5, 92nd Gen. Assem., 1st Reg. Sess. (Mo.2003), *reprinted in* 2003 Mo. Laws 757. That amendment also included a somewhat offsetting provision that allowed county commissions to elect to pay "a full-time retirement benefit," even for those prosecutors who became full-time before August 28, 2001. These new provisions, however, do not detract from the rational basis for the disparity. Whatever the changes to come in statutory retirement compensation for full-time prosecutors in third class counties, the fact remains that the voters in those counties that approved the prosecutors' full-time status before August 28, 2001, did so at a time when the retirement compensation was a fixed amount and without knowledge of the subsequent changes in the compensation amounts.

Because there is a rational basis for the disparity in compensation for third-class prosecutors who became full-time before August 28, 2001, and those who became full-time after August 28, 2001, there is no equal protection violation. Accordingly, the judgment of the trial court is reversed.

All concur.