THE STATE *ex rel.* HEAVEN, *Relator*, v. ZIEGENHEIN *et al.*

144   283
177   372
177   393

### In Banc, May 24, 1898.

1. **Pensions:** POLICE: UNCONSTITUTIONAL. The act of the General Assembly of April 9, 1895, providing that any person who shall serve as a policeman of St. Louis for twenty years may be retired from active service on half pay for the remainder of his life, is in violation of that part of the Constitution which declares that the General Assembly shall have no power to authorize any city to grant public money in aid of or to any individual.

2. ——: ——: ——: PART PAYMENT. Such act can not be upheld on the ground that such pension is a part of the contract of employment of the policeman by the city, and that the payment to him of half his former salary is in compensation for services rendered before his retirement.

3. ——: ——: ——: PROSPECTIVE ACTION. Even though said act were constitutional such pension could not be paid to any retired officer unless he had served twenty years. after such law went into effect, although he might have served twenty years prior to that time. As the act uses the words "any person who *shall* serve for a period of twenty years or more," it has only a prospective. application.

### *Mandamus.*

PEREMPTORY WRIT DENIED.

*Hough & Hough* and *Charles T. Noland* for relator.

(1) The right of the relator to a certificate from the board of police commissioners is in no way dependent upon an appropriation by the municipal assembly to pay any warrant which may be drawn

for the same by the city auditor. The court will
remember that section 16 of article XIV, of the scheme
and charter, provides that all claims against the board
of police commissioners shall be certified to by the
president and secretary of said board, and that this
requirement precedes any action on the part of the
auditor who is required to audit such claims, and who,
it is said, can not audit such claims unless money has
been appropriated for the payment of the warrant
which he may draw on the treasurer. We are now
simply taking the first step, and in taking that step,
it is not at all important to consider whether any
money has been appropriated for the payment of any
warrant which the auditor may be hereafter requested
to draw. (2) Respondents' second contention is that
the provisions of this law authorize the city of St.
Louis to give as a gratuity or charity the public money
to certain members of the police force. Relator con-
tends that these provisions relate solely to future serv-
ices rendered by those on the police force at the time
of the enactment of the law, and those appointed
thereafter. The State has a perfect right to authorize
a municipality to offer inducements for good service
on the part of its employees. The conditions named
become a part of the contract of employment. There
is nothing in the Constitution to prevent the legislature
authorizing the police commissioners and the munici-
pality of St. Louis to pay its servants and employees
partly in cash, and partly in promises to pay in the
future upon the fulfillment of certain conditions. The
act does not authorize the municipality of St. Louis
"to lend its credit or to grant public money or thing
of value in aid of or to any individual association or
corporation whatsoever." (3) The act does not at-
tempt to authorize the municipal authority of St.
Louis to grant any extra compensation, fee or allow-

ance, after service has been rendered, or a contract has been entered into and performed in whole or in part. It provides solely for a contract relating to future services and their pay. *State ex rel. v. Co. Ct.*, 34 Mo. 546. (4) A county is not a private corporation, but an agency of the State government, and while the legislature can not take from the county its property, it has full power to direct the mode in which the property shall be used for the benefit of the county. The city of St. Louis is now a county within the meaning of the law. *Ray Co. to use v. Bently*, 49 Mo. 242; *St. Louis v. Shields*, 52 Mo. 354; *State ex rel. v. Leffingwell*, 54 Mo. 472; *Hannibal v. Marion Co.*, 69 Mo. 577; *State ex rel. v. Holliday*, 70 Mo. 137. (5) The law of 1895 is not a special law. The maintenance of a police force is not a matter of purely local concern, but one of general public interest. Dillon on Mun. Corp. [4 Ed.], sec. 60, p. 102; *Ewing v. Hoblitzelle*, 85 Mo. 64; *State ex rel. v. Railroad*, 117 Mo. 1; *Kansas City ex rel. v. Scarritt*, 127 Mo. 654. (6) The issuing of the certificate is a purely ministerial act and *mandamus* is the proper way to enforce the issuing of a certificate by respondents. High on Ex. Leg. Rem. [3 Ed.], secs. 324, 350, 351 and 352; *People v. Collins*, 7 Johns. Rep. 549; *Falk v. Strother*, 84 Cal. 544; *Campau v. Board of Public Works*, 86 Mich. 372.

*Charles Claflin Allen* for respondent.

The acts of the General Assembly of Missouri, approved April 22, 1891, and April 9, 1895, attempting to require the city of St. Louis to pay pensions to retired policemen, are unconstitutional, and, hence, respondent can not lawfully audit relator's claim. *First.* They violate section 47, of article IV, of the Constitution, which prohibits the General Assembly

from authorizing any city to grant public money or thing of value in aid of or to any individual. *Second.* They violate section 53 of article IV of the Constitution, which prohibits the General Assembly from passing any local or special law, "regulating the affairs of counties, cities, townships, wards or school districts," or, "incorporating cities, towns or villages, or changing their charters." *Third.* They violate section 48 of article IV of the Constitution, which prohibits the General Assembly from granting or authorizing any municipality to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered or the contract has been entered into and performed in whole or in part. *Fourth.* They are in effect an amendment to the charter of the city of St. Louis in reference to a matter of purely local concern, and are in contravention of section 22 of article IX of the Constitution of Missouri, and for this reason are void. *Kansas City ex rel. v. Scarritt,* 127 Mo. 642. *Fifth.* Said acts are an attempted exercise of legislative power over the city in matters of purely local and municipal concern, and are, therefore, unconstitutional. In matters of purely local concern, it is beyond the power of the legislature to coerce a municipal corporation to contract a debt without its consent. *People ex rel. v. Common Council,* 28 Mich. 228; *Detroit v. Road Co.,* 43 Mich. 140; *Mayor v. Com.,* 44 Mich. 602; *Fund Society v. Philadelphia,* 31 Pa. St. 183; Dillon on Mun. Corp. [4 Ed.], secs. 72 and 74; Cooley on Tax. [2 Ed.] 688; *Philadelphia v. Fox,* 64 Pa. St. 169; *Railroad v. City,* 77 Ill. 505; *People v. Chicago,* 51 Ill. 17; *People v. Solomon,* 51 Ill. 37; *Harard v. Drainage Co.,* 51 Ill. 130.

WILLIAMS, J.—We are called upon in this case (which is an original proceeding in this court by man-

*damus* against the St. Louis Police Board) to determine the validity of what is known as the "Police Pension Law" of 1895. A statute enacted in 1861, created a board of commissioners for the control of the police force of the city of St. Louis, and committed to said board the entire charge and management thereof. The commissioners, except the mayor of said city, who is *ex officio* a member and president of the board, are appointed by the Governor, and the policemen are declared by the statute to be officers of the State (2 R. S. 1889, p. 2200, sec. 33). The salaries are paid by the city, and the board is authorized to certify to the correctness of claims against the police department. Relator, a former member of the force, asserts that he is entitled to half pay since June 16, 1897, when he was placed upon the "retired list," and asks that the board of police commissioners be required to issue a proper certificate to him showing that fact. He bases his rights upon, and the question for decision arises out of, the amendatory act of April 9, 1895, to be found in the Session Acts of 1895, p. 234. The parts material to this controversy are as follows:

"The board of police commissioners are hereby authorized to make all such rules and regulations, not inconsistent with this act, as they may judge necessary for the appointment, employment, uniforming, disciplining, trial and government of the police and for the relief and compensation of members of the police force injured in person or property in the discharge of their duty, and the families of the officers and men killed while in such discharge of duty. And whenever any person is employed by said board as a policeman, such employment shall be upon the following conditions:

"*First.*" [A provision is here inserted for the retirement upon half pay of one physically disabled

while in the performance of his duty as policeman.] "*Second.* If a member of the force shall lose his life while in and by reason of the performance of his duty and shall leave a widow, or children under sixteen years of age, such widow during her life, and if there be no widow then the child or children until they become sixteen years old, shall receive a monthly payment equal to one half of the salary attached to the rank which the policeman held at the time of his death. *Third.* Any person so employed, who shall serve for the period of twenty years or more, may in the discretion of said board be retired from active service and be thereafter paid during his natural life a yearly salary equal to one half the amount of the salary attached to the rank which he may have held on said force for one year next preceding his retirement." It is further declared that no one retired under the provisions of said act shall be entitled to any relief from the police relief association organized under section 2885 of the statutes of 1889.

Relator was appointed a member of the police force on March 23, 1866. He entered upon the discharge of his duties April 1, 1866. The board adopted a rule, on March 11, 1884, that all officers be commissioned for a term of four years from April 1, 1884, and he received a commission for that length of time. He, at his own request, was made a turnkey on the thirty-first of May, 1886, and continued to serve in that capacity until June 16, 1897, when the board placed him upon the "retired list." He was not reappointed at the expiration of each period of four years during his service, but continued in his position without any action by the board upon the subject. He claims that this amounted to a new appointment at the end of every four years for another term of the same length, and thereby made his *last* appointment date from April

1,1896, after the act of 1895, *supra*, went into effect. As a matter of fact, however, no action was taken by the board at that time, and he simply continued in his position without any new appointment or commission. The salary of a turnkey is $65 a month and relator claims to be entitled since June 16, 1897, when he was retired from active service, to a monthly salary of $32.50, and that he will be entitled to a like amount each month during his life under the act aforesaid.

One ground relied upon in defense of the claim is that the Constitution of the State expressly forbids such allowances. Section 47, article IV, is cited in support of this contention. It declares that "the General Assembly shall have no power to authorize any county, city, town or township or other political subdivision of the State now existing, or that may hereafter be established . . . . . . . to grant public money . . . . . . . in aid of or to any individual, association or corporation whatsoever." It is conceded that the legislature can not, under the Constitution of this State, authorize a city to give money out of its treasury simply as a gratuity in recognition of *past* services rendered by public officers. It is claimed, however, that the provisions of the act of April 9, 1895, for the retirement upon half pay of police officers after twenty years of service, etc., is part of the contract of employment of those appointed since that act took effect, and constitutes a portion of the *compensation* for the services rendered *before* retirement; that the act provides, *in advance*, that the *pay* of the men upon the force shall consist of the salaries to be drawn during the time they shall hold their places, and half of the same after they are put upon the retired list.

If the argument in support of relator's position could be successfully maintained, it would avail him

nothing. He was in office less than two years after the time fixed for the act to go into operation. Eighteen of the twenty years of his service were before there was any provision for such alleged compensation, payable after retirement. If this is to be regarded as an additional salary *for twenty years of faithful and efficient work* in the police department, the relator would certainly be receiving, in part, at least, a gratuity for what he had done before the act went into effect, and before any such compensation, as is now claimed, was provided.

Then, too, the law must be given a prospective operation, and its language indicates that such was the intent of the law-makers. The words used are: "Any person so employed who *shall* serve for the period of twenty years or more may . . . . . . . be retired from active service." This would seem to refer to services to be thereafter performed, and applying the ordinary rules in the construction of statutes, this language would imply that the twenty years of service must be in the future and necessarily after the passage of the act. The rule is that legislative enactments are held "to operate prospectively and not otherwise unless the intent that they are to operate in such an unusual way, to wit, retrospectively, is manifest upon the face of the statute in a manner altogether free from ambiguity." *Leete v. Bank*, 115 Mo. 184-195, and cases cited.

The act, however, is in all essential features simply a "pension law," and is properly so-called. It can not be treated merely as providing compensation for services rendered before retirement and as part of the salary therefor. A salary, payable from time to time during active service is received by each police officer and the amount is fixed according to rank. The man who serves twenty years *is entitled to no less during that period* than he whose tenure is shorter. The police-

State ex rel. v. Ziegenhein.

man, who remains on the force for twenty years less five days, and the one who retains his office for the full term, are paid *during active service* precisely the same sum, if they are of like rank. This must be deemed proper compensation for the time *actually devoted to the public service.* Nothing is withheld from the person who may serve twenty years, to be paid to him after he may be placed upon the "retired list," and after such retirement he is no longer subject to police duty and can not be earning a salary. Acts 1895, p. 235, par. 3.

If he has been paid the same as other officers of shorter terms, for the time devoted to public duties, anything in addition thereto can only be regarded as a mere gratuity. The argument of the relator would establish the proposition that it is a mere matter of legislative discretion to give a salary after retirement to all officers of the State and its municipalities, provided they shall be elected or appointed after the passage of an act to that effect.

In *Mead v. Inhabitants*, 1 N. E. Rep. 413, the supreme judicial court of Massachusetts, in discussing a somewhat similar subject, said of the act then being considered, as we feel constrained to say of the one now under discussion: "In any view we can take of the statute, the payments it contemplates are mere gratuities or gifts to individuals. The principle would be the same *if a town should vote a gratuity or pension to one who had rendered service as an officer*, or was in any way entitled to its gratitude. This a town has not the power to do, even with the sanction of the legislature."

The courts should not search for plausible reasons and specious pretexts to evade and set aside constitutional prohibitions against the improper use of public funds, and thereby unnecessarily increase the burdens of taxation. Upon the contrary, all such provisions

in the organic law of the State should be enforced and made effectual according to their plain meaning and intent.

We are not unmindful of the important services rendered by the officers of the police force and of the benefits derived from their faithfulness in protecting and guarding the lives and property of the citizens. They are officers of the State, however, and the Constitution has declared, that, like all others holding official stations, they must rest content with the remuneration fixed by law, and after their services have been performed, no matter how valuable they may have been, the city can not, as a gratuity or pension, "grant public money to or in aid of any individual," and the courts have no power to require it to be done. A peremptory writ must be denied.

GANTT, C. J., and SHERWOOD, BURGESS, ROBINSON and BRACE, JJ., concur. MARSHALL, J., having been of counsel, took no part in the decision.