**MISSOURI PROSECUTING ATTORNEYS and Circuit Attorneys Retirement System, an agency of the State of Missouri, Appellant,**

v.

**BARTON COUNTY, Gerry Miller, John Stockdale, and Dennis Wilson, Respondents.**

**No. SC 89896.**

Supreme Court of Missouri, En Banc.

March 23, 2010.

Rehearing Denied May 11, 2010.

J. Kent Lowry, Jeffrey T. McPherson, Kim S. Burton, Armstrong Teasdale, LLP, Jefferson City, MO, for appellant.

Marc Ellinger, Thomas Rynard, Blitz, Bardgett, & Deutsch, L.C., Jefferson City, MO, for respondent.

LAURA DENVIR STITH, Judge.

The Missouri Prosecuting Attorneys and Circuit Attorneys Retirement System ("PACARS") filed a petition for writ of mandamus to compel payment by Barton County of the pension contributions required from it under section 56.807, RSMo Supp.1995. Barton County quit paying pension contributions on behalf of its prosecutors beginning in 2002, when the Missouri Department of Social Services ceased reimbursing it for those contributions. The trial court found that section 56.807 violates what is commonly known as the "Hancock Amendment" to the Missouri Constitution, Mo. CONST., ART. X, § 21, and refused to require Barton County to make the payments mandated by that section. PACARS appeals.

While the Hancock Amendment generally bars the State from mandating that counties pay for a new activity or service or for an increased level of activity or service without a state appropriation to pay for that new or increased mandate, article VI, section 11 of the Missouri Constitution specifically provides that an increase in the "compensation of county officers" does not constitute a new or increased level of a service or activity. Such compensation, as a result, is not within the scope of the Hancock Amendment. For the reasons set out below, this Court finds that pension contributions are included within the phrase "compensation of county officers" as used in article VI, section 11. Therefore, the trial court erred in finding that the Hancock Amendment invalidates section 56.807 to the extent it requires counties to pay pension contributions for its prosecutors. Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case was submitted on stipulated facts. In 1989, the legislature enacted the Prosecuting Attorneys' and Circuit Attorneys' Retirement Fund (commonly referred to as the PACARS statutes). §§ 56.800–56.840, RSMo Supp.1990. As relevant here, these statutes authorize the creation of a retirement fund for prosecutors and circuit attorneys.

As initially enacted, section 56.807 provided for counties to receive "incentive funds" equal to the amount they were required to pay into PACARS. § 56.807.1. But in 1995, the legislature amended the PACARS statutes by removing the provisions entitling counties to reimbursement for county contributions. It instead provided, "The funds for prosecuting attorneys and circuit attorneys provided for in subsection 2 of this section shall be paid from county or city funds." § 56.807.1, RSMo Supp.1997.[1]

Barton County began making contributions on behalf of its prosecutors to PACARS from the time it came into being in 1989. In August 1995, Barton County's treasurer was provided with written notice

1. In 2003, the statute was amended again to its current form, which states in part:
 Beginning August 28, 1989, and continuing monthly thereafter until August 27, 2003, the funds for prosecuting attorneys and cir-
 cuit attorneys provided for in subsection 2 of this section shall be paid from county or city funds.
 § 56.807(1), RSMo Supp.2008.

that, as a result of the 1995 amendments to the PACARS statutes, incentive payments no longer would be required to be made to reimburse the county for its contributions to PACARS. Despite this written notice, from 1989 until January 2002, it appears that Barton County received incentive payments from the Department of Social Services that it specifically credited as contribution payments and forwarded to PACARS. Beginning in January 2002, however, the department took the action presaged in its 1995 letter and ceased making incentive payments reimbursing Barton County for its PACARS contributions. The Barton County Commission then voted to discontinue participation in PACARS.

In August 2002, PACARS sent a letter to Barton County demanding that it make the pension contribution payments, as required by section 56.807.1. The county refused, stating it believed that, to the extent PACARS required it to make pension contributions without reimbursement from the state, the statute violated the Hancock Amendment. As relevant here, the latter prohibits the state from requiring any "new activity or service or an increase in the level of any activity or service beyond that required by existing law ... unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs." Mo. CONST., ART. X, § 21.

In November 2006, PACARS filed a petition for writ of mandamus against Barton County and County Commissioners Gerry Miller, John Stockdale and Dennis Wilson in which it requested that the court compel Barton County to make the pension contributions required by section 56.807. Bonda Rawlings, a resident of Barton County, intervened as a taxpayer defendant.[2] The trial court found that section 56.807 violates the Hancock Amendment to the extent it mandates that Barton County contribute to PACARS without receiving reimbursement from the State. It thereby rejected PACARS's argument that article VI, section 11 of the Missouri Constitution specifically provides that increases in the compensation of county officials does not constitute a new or increased level of a service or activity as barred under the Hancock Amendment. PACARS appeals. Mo. CONST., ART. V, § 3.

## II. STANDARD OF REVIEW

 As the case was submitted on stipulated facts, " 'the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated.' " *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979), *quoting Drysdale v. Cornerstone Bank*, 562 S.W.2d 182, 183 (Mo.App.1978). Therefore, as the decision below was based on the interpretation of section 56.807 and the Missouri Constitution, this Court's review is *de novo. Gash v. Lafayette County*, 245 S.W.3d 229, 231 (Mo. banc 2008); *Akers v. City of Oak Grove*, 246 S.W.3d 916, 919 (Mo. banc 2008). "This Court's review begins with the recognition that all statutes are 'presumed to be constitutional and will not be held unconstitutional unless [they] clearly and undoubtedly contravene[ ] the constitution.' " *Mo. Prosecuting Attorneys & Circuit Attorneys Ret. Sys. v. Pemiscot County*, 256 S.W.3d 98,

---

**2.** The parties further stipulated that Barton County has made no payment to PACARS from January 2002 until the present. Further, it is not disputed that if Barton County is subject to the contribution payments provided for under section 56.807 from January 2002 to the present, the amount payable under that section is $375 per month from January 2002, to August 27, 2003, § 56.807.2, RSMo Supp. 1993, and $187 per month from August 27, 2003, to the present. § 56.807.5, RSMo Supp. 2008.

102 (Mo. banc 2008) (alterations in original), *quoting United C.O.D. v. State,* 150 S.W.3d 311, 313 (Mo. banc 2004). "Courts will enforce a statute unless it plainly and palpably affronts fundamental law embodied in the constitution." *United C.O.D.,* 150 S.W.3d at 313. "Doubts will be resolved in favor of the constitutionality of the statute." *Pemiscot County,* 256 S.W.3d at 102.

## III. PENSION CONTRIBUTIONS ARE INCLUDED WITHIN ARTICLE VI, SECTION 11

In *Boone County v. State,* 631 S.W.2d 321, 326 (Mo. banc 1982), this Court held that a state statute requiring counties to increase the salary of county clerks without state funding violated the Hancock Amendment. The principle underlying *Boone County* is that the Hancock Amendment generally prohibits the state from increasing a county's financial obligations to county employees without state reimbursement. In response to *Boone County,* article VI, section 11 of the Missouri Constitution was amended in 1986 to state in pertinent part:

A law which would authorize *an increase in the compensation of county officers* shall not be construed as requiring a new activity or service or an increase in the level of any activity or service within the meaning of this constitution.

Mo. Const., Art. VI, § 11 (emphasis added). This constitutional provision, as amended in 1986, therefore provides an exception to the Hancock Amendment for laws that authorize "an increase in the compensation of county officers." *Id.* Such increases in compensation can be mandated devoid of state reimbursement without running afoul of the Hancock Amendment.

The dispositive issue on appeal is whether pension contributions are encompassed within the phrase "compensation of county officers" as used in article VI, section 11. If the phrase "compensation of county officers" includes pension contributions as well as salaries and other forms of remuneration to county officers, then section 56.807 does not violate the Hancock Amendment because article VI, section 11 provides an exception to the Hancock Amendment for the payment of all such compensation. Conversely, if the phrase "compensation of county officers" as used in article VI, section 11 does not include pension contributions, then mandating that counties pay such contributions violates the Hancock Amendment.

Article VI, section 11 does not define the phrase "compensation of county officers," and, in the absence of such clarity, courts must turn to rules of construction to determine meaning. *Boone County* sets out a clear statement of the principles governing construction of a constitutional provision:

Rules applicable to constitutional construction are the same as those applied to statutory construction, except that the former are given a broader construction, due to their more permanent character. *State ex inf. Martin v. City of Independence,* 518 S.W.2d 63, 65 (Mo.1974). In determining the meaning of a constitutional provision the court must first undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted. *State ex inf. Danforth v. Cason,* 507 S.W.2d 405, 408 (Mo. banc 1973).

631 S.W.2d at 324. As *Boone County* further explains:

The meaning conveyed to the voters is presumptively equated with the ordinary and usual meaning given thereto. *Id.* at 409. The ordinary, usual and commonly understood meaning is, in turn, derived from the dictionary. *Id., Accord, Con-*

*cerned Parents v. Caruthersville School District,* 548 S.W.2d 554 (Mo. banc 1977); *State ex rel. Curators of the University of Missouri v. Neill,* 397 S.W.2d 666 (Mo. banc 1966); *Rathjen v. Reorganized School District R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516 (1955). The grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed. *State ex inf. Danforth v. Cason, supra; O'Malley v. Continental Life Insurance,* 335 Mo. 1115, 75 S.W.2d 837 (1934). To this extent the intent of the amendment's drafters is influential. Finally, due regard is given to the primary objectives of the provision in issue as viewed in harmony with all related provisions, considered as a whole. *State ex inf. Martin v. City of Independence,* 518 S.W.2d at 65.

*Id.* Therefore, when words are not used in a technical sense, they "must be given their plain or ordinary meaning unless such construction will defeat the manifest intent of the constitutional provision." *Rathjen v. Reorganized Sch. Dist. R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516, 523 (1955). And courts presume every word in a statute has meaning. *Civil Serv. Comm'n of City of St. Louis v. Members of Bd. of Aldermen,* 92 S.W.3d 785, 788 (Mo. banc 2003).

■ Further, the phrase under consideration must be evaluated in light of the context in which it is used. This Court long has recognized that a word may have a different meaning depending on the statute or constitutional provision in which it appears:

The fact that a word, term or phrase in a different context and under different circumstances may have a changed meaning is well demonstrated by the ruling in *Towne v. Eisner,* 245 U.S. 418, 38 S.Ct. 158, 159, 62 L.Ed. 372 [ (1918) ], wherein Mr. Justice Holmes stated: 'But it is not necessarily true that income means the same thing in the Constitution and the Act. A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.'

*Rathjen,* 284 S.W.2d at 522.

Context and reference to common usage is particularly important in interpreting words such as "compensation" and "pension," which can have quite varied meanings in different contexts. Accordingly, while one definition of "compensation" is "payment for value received or services rendered," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (1993), the word also can have such different meanings as recompense, payment for injuries as in "worker's compensation," rendering equal, making good or counterbalancing, moral or spiritual reward, and so forth. *Id.* It also can be given the broad meaning of a "return for a benefit conferred or promised, that is, a consideration . . . a remuneration for services, whether in the form of a fixed salary, fees, commissions, or perquisites of whatever character . . .". BALENTINE'S LAW DICTIONARY 233 (3d ed. 1969). Its synonyms include "allowance," "earnings" "reimbursement" and "salary." ROGET'S THESAURUS 161 (1992).[3] "Pension" sometimes is referred to by the legal term

**3.** Compensation also has been defined to mean "something given or received as an equivalent for services, debt, loss, injury, suffering, lack, etc" RANDOM HOUSE UNABRIDGED DICTIONARY 417 (2d Ed. 1993). *See also* WORLD BOOK DICTIONARY, VOL. 1, 423 (2001) (which defines compensation as broadly as "something given to make up for something else . . ." and as ambiguously as "pay").

"deferred compensation," which *Black's* defines as "compensation that will be taxed when received and not when earned." BLACK'S LAW DICTIONARY 421 (1991). Some additional synonyms of pension include, but are not limited to: "allowance;" "payment" and "premium." ROGET'S THESAURUS 617. Similarly, Webster's Third New International Dictionary 2568 (1993), defines the term *"wage"* as "a pledge or payment of [usually] monetary remuneration by an employer [especially] for labor or services [usually] according to contract and on an hourly, daily or piecework basis and often including bonuses, commission, and amounts paid by the employer for insurance, *pension,* hospitalization, *and other benefits* [.]" *Id.* (emphasis added), quoted in *Miles v. Lear Corp.,* 259 S.W.3d 64, 75 (Mo.App.2008) (separate opinion of Odenwald, J.) (alterations in original) (emphasis added).

Missouri courts also have dealt with the meaning of the term "compensation" in the context of dividing pension benefits in a dissolution proceeding. These cases hold that a pension benefit "is not earned on the last day of employment prior to retirement, but 'is a form of deferred compensation which is attributable to the entire period in which it was accumulated.'" *Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo. banc 1982), *quoting Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004, 1007 (1979). For that reason, a worker is considered to have earned a ratable proportion of his or her pension as that person works, so that if a spouse was married for one-half of his or her working life, the former spouse would be entitled to a proportionate share of one-half of the pension benefits. *See, e.g., Redlinger v. Redlinger,* 111 S.W.3d 413, 415 (Mo.App.2003).

■ In other words, pension benefits are a form of marital property just like other compensation and property, for they are "a form of deferred compensation funded by money earned during the parties' marriage." *In re Marriage of Cranor,* 78 S.W.3d 150, 155 (Mo.App.2002); *accord, Coffman v. Coffman,* 215 S.W.3d 309 (Mo.App.2007).

As is evident, the word "compensation" is a generic term that can be used in different senses in different contexts. While the fundamental meaning of the term—remuneration given to one for his or her work—remains constant, there is no single definition given to what types of remuneration are included in the term in the various provisions in which it is used in the Missouri Constitution.[4] Any particular constitutional or statutory provision must be examined to determine whether the legislature in drafting the referendum language, and the voters in adopting language by referendum or initiative, used it in a different sense than that given it in other sections of the constitution, whether because the common understanding of the term has changed over time or because it is used in a different context or given a particularized meaning.

■ Here, the relevant constitutional provision uses "compensation" in the context of a provision addressing "compensation of county officers." The ultimate issue before this Court is whether it permits the legislature to require a county to make pension contributions on behalf of its prosecuting attorneys as part of their remuneration for the performance of their official duties. As is evidenced by the treatment of such contributions as deferred compen-

---

4. The Missouri Constitution uses the word "compensation" in more than two dozen different provisions and uses other words relating to remuneration in multiple other provisions, all enacted at different times, applicable to different contexts, and utilized in relation to and affecting different persons or entities.

sation and a form of marital property subject to division by the court in a dissolution action (discussed above), the right to such pension contributions is earned as the prosecutor works each day, although the contributions actually are paid out at a later date. The solution to this ultimate issue, therefore, depends on the answer to a narrow question now before this Court: Whether the voters, in adopting article VI, section 11 in 1989, intended to use the term "compensation of county officers" in the narrow sense of immediately paid earnings or in the broader sense of all payments earned for services rendered even if payable at a later date, thereby including pension contributions.

The Missouri Constitution historically dealt with public retirement systems for public employees of political subdivisions as separate from other compensation to such employees. Therefore, while payment of salaries of employees of political subdivisions always has been allowed, the payment of pension benefits to county employees was not always permitted. For example, in *State ex rel. Heaven v. Ziegenhein*, 144 Mo. 283, 45 S.W. 1099 (1898), a retired police officer sought to enforce his statutory right to pension benefits. The retired officer argued that the pension payments were not a grant of public money in aid of individuals but, instead, were a part of his compensation for police work. The Court rejected this argument because it found a pension benefit was not part of an officer's "salary." It said the officer's salary was his entire "proper compensation" for his official duties because the 1875 constitution then in effect stated, "the general assembly shall have no power to authorize any county, city, town or township or other political subdivision of the state now existing, or that may hereafter be established, to grant public money in aid of or to any individual, association or corporation whatsoever." *Id.* at 1099–

1100. The court further found that (unlike today, as is evident from the dissolution cases discussed above) a pension benefit was not considered to have been earned at the time of the work, but only later, upon retirement. Therefore, a pension benefit could not be a part of the officer's salary, and a salary was all that the constitution permitted as compensation to the officer. *Id.*

By 1917, this Court had interpreted the term "compensation" far more broadly. *State ex rel. Emmons v. Farmer*, 271 Mo. 306, 196 S.W. 1106 (1917), concerned a statute providing that clerks of the circuit courts henceforth were to be paid by salary rather than by fee. The question was whether this was a change in the method of compensation of the clerks. The Court found it was not, for "the language of the Constitution includes both fees and salary under the comprehensive term 'compensation' as witness this language: 'The compensation or fees of no state, county or municipal officer shall be increased during the term of office.' " *Id.* at 1108, quoting, Mo. Const., Art. XIV, § 8 (1875). *Emmons* then held that under this constitutional provision:

Clearly fees are not salary; so if the provision of the section quoted supra includes salary at all—and no one would be so bold as to deny that it does—then *the word "compensation" is the generic term, and includes, as used in the above provision of the Constitution, salary, fees, pay, remuneration for official services performed, in whatever form or manner or at whatsoever periods the same may be paid.*

*Id.* (emphasis added). Accordingly, *Emmons* held that the term "compensation" in the then-existing constitutional provision concerning circuit clerks was used in an all-encompassing sense, that both a fee and a salary are forms of compensation,

and that a change from a fee-based to a salary-based system was *not* a change in the method of *compensation but rather* a change in the *method of payment* of that compensation. *Id.*

Of course, at the time *Emmons* and *Ziegenhein* were decided, political subdivisions were not authorized to make pension contributions or other forms of deferred compensation to their officers or employees. But that changed in 1966, when the voters embraced pensions for political subdivision employees and officers by adopting article VI, section 25, which states in relevant part:

> [T]hat the general assembly may authorize any county, city or other political corporation or subdivision to provide for the retirement or pensioning of its officers and employees . . . [5]

▮ After 1966, therefore, such pensions for employees of counties and other political subdivisions were permissible. As *Emmons* noted, " 'compensation' is the generic term, and includes, as used in the above provision of the Constitution, salary, fees, pay, *remuneration for official services performed, in whatever form or manner or at whatsoever periods the same may be paid.*" 196 S.W. at 1108 (emphasis added). This meant that from that point forward, while there was no requirement to include pension contributions within the term "compensation" in subsequent constitutional and statutory provisions concerning such political subdivisions, neither was there any longer a bar to their inclusion, as was the case at the time *Ziegenhein* was decided.

No new constitutional provision affecting compensation or pensions of employees of political subdivisions was enacted between

the 1966 adoption of article VI, section 25, permitting political subdivisions to pay pensions to their employees, and this Court's 1982 decision in *Boone County.* That decision concerned only whether a state statute required counties to increase the salaries of a county clerk without violating the Hancock Amendment. It held that such a violation had occurred because the *increase in salary* was an increase in an activity or service which a county could not be mandated to pay. *Boone County,* 631 S.W.2d at 326.

As noted earlier, in response to that 1982 ruling in *Boone County,* the legislature approved submission of a constitutional amendment to the voters that provided in pertinent part that "a law which would authorize *an increase in the compensation of county officers* shall not be construed as requiring a new activity or service or an increase in the level of any activity or service within the meaning of this constitution." Mo. CONST., ART. VI, § 11 (emphasis added). This amendment did not permit just the increase in *salary of county clerks*—the only issue addressed in *Boone County*—but the increase in compensation of all county officers. But it did not define what was included in the phrase "compensation of county officers," resulting in the present disagreement.

In 1989, three years after the passage of article VI, section 11 excepting compensation of county officers from the Hancock Amendment, the legislature adopted the PACARS statutes authorizing the creation of a retirement fund for prosecutors and circuit attorneys and, as amended in 1995, requiring a county to make pension contributions regardless of reimbursement. By enacting PACARS, the legislature thereby

---

5. This 1966 amendment would not have been necessary if the right to pay pensions to employees or officers of political subdivisions had previously been authorized; therefore

pensions could not have been specifically in the minds of the voters in adopting constitutional provisions, or of the legislature in enacting statutes, prior to 1966.

interpreted article VI, section 11's statement that an increase in compensation to county officers shall not be a violation of the Hancock Amendment to permit it to pass a statute requiring counties to pay or increase pensions for such officers without violating that amendment.

While this Court does not conclude lightly that the voters intended to expand the meaning of the words "compensation of county officers" beyond the meaning they would have had prior to the time that article VI, section 25 first authorized the payment of pensions to county officers, the language and context of the passage of article VI, section 11 leads to no other conclusion. The fact that article VI, section 11 authorized an increase in the "compensation of county officers" rather than the salary of county clerks supports the conclusion that it was intended to do more than reverse *Boone County's* narrow holding. Had the latter been its intent, the amended provision would have stated "a law which would authorize an increase in the salary of county clerks shall not be construed as requiring a new activity or service or an increase in the level of any activity or service within the meaning of this constitution." It was written far more broadly, however, and authorized laws that require *"an increase in the compensation of county officers"* (emphasis added).

This Court presumes that the decision to approve the phrase "compensation of county officers" was intentional, and it would be inconsistent with our rules of construction to interpret that amendment as if it authorized only an increase in "salary" or immediately payable earnings. *Civil Serv. Comm'n,* 92 S.W.3d at 788 (courts presume every word in a statute [or constitution] has meaning). Moreover, as noted, under the principles set out in *Emmons,* the word "compensation" if used in the generic sense may include *"salary, fees, pay, remuneration for official services per-* *formed, in whatever form or manner or at whatsoever periods the same may be paid."* 196 S.W. at 1108.

This still begs the question whether the fact that section 11 clearly included more than salary necessarily means it includes pension benefits. In support of the conclusion that it does is *Sihnhold v. Mo. State Employees' Ret. Sys.,* 248 S.W.3d 596 (Mo. banc 2008). In that case, a former administrative law judge ("ALJ") whose employment had terminated in 1989 sued for a declaratory judgment that he was entitled to ALJ retirement benefits at the age 62 because in 1999 the legislature changed the law and permitted ALJ retirement benefits to vest at age 62 rather than age 65. *Id.* at 597. This Court held that to award the plaintiff retirement benefits from age 62 onward would violate article III, section 38(a) and 39(3) because doing so would be to grant extra *compensation* to a public officer, stating:

> The rationale of the *Cleveland* and *Police Retirement System* cases demonstrates that a retroactive award of *three years of extra pension benefits* to Mr. Sihnhold would be unconstitutional. When Mr. Sihnhold's employment terminated in 1989, section 287.815 provided that he would become eligible for benefits at the age of sixty-five. If the 1999 amendment is applied and Mr. Sihnhold is deemed eligible for benefits at age sixty-two, *he would obtain three extra years of compensation to which he was not entitled at the time he rendered his services.* Consequently, the circuit court was correct to hold that application of the amended version of section 287.815 to Mr. Sihnhold would constitute a grant of extra compensation in violation of article III, sections 38(a) and 39(3).

*Id.* at 598 (emphasis added).

Other Missouri cases that have interpreted the word "compensation" as *not*

including pension benefits have done so because the legislature specifically indicated its intent to exclude such benefits from the sweep of that potentially broad term. In *Bauer v. City of Grandview,* 138 S.W.3d 810, 811–12 (Mo.App.2004), therefore, two current and two former city employees sought a declaratory judgment that Grandview's matching contributions to its local employee retirement fund are "compensation" as defined by section 70.600(8). While that statute defines "compensation" broadly as "the remuneration paid an employee by a political subdivision ... for personal services rendered by the employee for the political subdivision," it also states that in "determining compensation [to be reported] no consideration shall be given to: ... (b) Employer contributions to any *employee benefit plan or trust* ...." *Id.* at 813 (emphasis in original). Such an exclusion would have been unnecessary unless the legislature had believed that contributions to the retirement fund otherwise might be interpreted to be within the phrase "compensation" as used in relation to local government employees.

Similarly, *Civil Serv. Comm'n,* held that "compensation" as used in the city charter regarding the St. Louis Police Department "includes 'salary, wages, fees, allowances, and all other forms of valuable consideration ...,'" 92 S.W.3d at 788. But the Court rejected the argument that sick pay transferred into a retirement fund is a form of valuable consideration, and, therefore, is compensation because it found that the statute specifically set up a separate subsection dealing with retirement benefits, separate and apart from other types of compensation. *Id.*[6]

## IV. CONCLUSION

In sum, article VI, section 11 specifically and broadly refers to all "compensation of county officers" even though *Boone County* dealt only with salaries of county clerks.[7] Further, this Court previously has recognized that compensation can be used in a broad sense to mean all remuneration earned for service and that pension benefits are a form of deferred compensation or earnings in Missouri's dissolution cases, and this Court and the court of appeals have recognized that the word "compensation" may include pension benefits if those benefits are not excluded by the statute in question.

In light of the purpose of amending article VI, section 11 to permit the increase in "compensation of county officers" without limitation in regard to either the type of compensation or the type of officer involved, the Court concludes that article VI, section 11 includes within its scope contributions to pension funds on behalf of county prosecutors and circuit attorneys. Section 56.807 unequivocally requires counties to provide pension contributions to these county officers. Accordingly, the trial court erred in holding that section 56.807 violates the Hancock Amendment and in holding that defendants were not required to make pension contributions to PACARS. The judgment is reversed, and the case remanded.

---

6. *See also State ex rel. Nixon v. Koonce,* 173 S.W.3d 277, 286 (Mo.App.2005) (" 'A stream of income,' for purposes of § 217.831.3, is defined in § 217.827(1)(a) as coming 'from any source whatsoever, including a salary, wages, disability, retirement, pension, insurance or annuity benefits or similar payments' ").

7. Article VI, section 13 says that county officers shall be compensated for their service only by salaries, not by fees, but this seems to be intended to prohibit the older practice of a county officer being paid by a fee for service and not to state that such an official cannot earn a pension or a per diem or expenses, all of which elsewhere are authorized.

PRICE, C.J., and BRECKENRIDGE, J., concur.

WOLFF, J., concurs in separation opinion filed.

TEITELMAN, J., dissents in separation opinion filed; RUSSELL and FISCHER, JJ., concur in opinion of TEITELMAN, J.

MICHAEL A. WOLFF, Judge, concurring.

I concur in the principal opinion.

Every business day, in courtrooms throughout the state, prosecutors announce that they represent "the State of Missouri." These lawyers, for reasons more historical than rational, are not paid by the state, however, but by the counties. Their salaries and benefits vary considerably.

Toward the good purpose of enhancing the compensation of prosecutors, section 56.807, RSMo Supp.1995, was passed 15 years ago requiring counties to contribute to fund pensions for the state's prosecutors. Then, perhaps to take sting out of this requirement, the state found a way to reimburse these contributions through the Department of Social Services, whose large budget includes federal money and state money that may include recycled federal funds. The details of such maneuvers aside, it appears that this practice—which was ended in 2002 (about the time of the state's first fiscal crisis of this century)—was intended to obscure or lessen the costs of these pension contributions.

In other words, the state was following its time-honored practice of seeking justice on the cheap.

Just as in the recent public defender case, *State ex rel. Missouri Public Defender Comm'n v. Pratte*, 298 S.W.3d 870 (Mo. banc 2009), we should acknowledge that the state's interest in its criminal justice system exceeds its willingness to pay the costs.[1]

In this case, the burden of this unwillingness falls on the counties, many of which are strapped for money to meet their other obligations.

We citizens appear to have a collective willingness to pretend that we can have a highly functioning criminal justice system that will maximize public safety without having to pay for it. We have developed an attitude toward state governance that puts two conflicting main ideas in play— that all forms of taxation are bad and that state government, through tax credits and other spending for non-necessities, can be an ATM machine for the well-connected.

What is missing here is the true sense that spending for criminal justice is a necessity, not an optional luxury or an obligation that can be funded by some other government.

Today's decision allows the state to continue relying on a patchwork of locally funded county-by-county prosecution offices for the administration of justice.

I agree with the principal opinion that this is what the law allows. And what the law allows is a system that is well suited to meet the needs of the 19th century.

---

1. A further example, if one is needed, is the state's reimbursement for county jail custody for criminal defendants under section 221.105, RSMo 2000. The state pays counties $22 per day for pretrial detainees, substantially less than the cost to most counties. For inmates sentenced to county jail on a state offense, the state pays nothing. The incentive, of course, is for local prosecutors to urge judges to send offenders to state prisons at a far greater cost than the cost of punishing those who otherwise could be punished through greater use of county jail facilities. This shows that sometimes not paying for something ends up costing more.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent. For well more than 100 years, and continuing to this day, the Missouri Constitution, without exception, has classified compensation and pensions as separate items. It is the Missouri Constitution, not the division of marital property in a dissolution action or various generic definitions and synonyms, that provides the context for understanding the meaning of the phrase "compensation of county officers" as used in article VI, section 11. This context, as well as the plain language of article VI, section 13, demonstrates that the phrase "compensation of county officers" does not refer to pension contributions or benefits.

Article VI, section 11 does not define the term "compensation of county officers." The word "compensation" means "payment for value received or services rendered." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Neither this definition, nor the similar dictionary definitions of compensation and its synonyms cited by the principal opinion, specifically include an employer's pension contributions as part of compensation. As the principal opinion states, therefore, reference to context is important to the interpretation of uncertain constitutional language. A contextual analysis will reach the correct result only if the reference point is the context in which the uncertain term is used. Reference to an inapposite context will result in an incorrect interpretation. It is for this reason that the cases counsel courts to interpret ambiguous terms in harmony with related provisions.

The principal opinion begins its contextual analysis by citing a number of dissolution cases for the proposition that pension benefits are a form of deferred compensation and, therefore, are included within the meaning of "compensation" under article VI, section 11. In a dissolution case, the issue is whether an asset is considered marital property, not whether that property is classified as compensation, savings, a pension benefit or any other particular kind of asset. Section 452.330. The dissolution statutes governing the classification and distribution of marital property are irrelevant to the meaning of "compensation" under article VI, section 11 of the Missouri Constitution. The relevant context is the Missouri Constitution.

The principal opinion undertakes a contextual analysis but does not analyze related constitutional provisions or account for the fact that the Missouri Constitution never has equated compensation and pensions. Instead, the principal opinion maintains that the context of the passage of article VI, section 11 leads to no other conclusion than that the phrase "compensation of county officers" includes pension benefits. There are three significant problems with this analysis.

First, the principal opinion places article VI, section 11 in context by noting that the amendment was intended to overrule *Boone County v. State*, 631 S.W.2d 321, 326 (Mo. banc 1982), which held that a statute requiring a salary increase violated the Hancock Amendment. If the meaning of article VI, section 11 is to be derived from its context, then the context should be defined by the specific facts and holding of *Boone County*. The facts of *Boone County* involved a salary increase, and the holding was that the salary increase violated the Hancock Amendment. Accordingly, to the extent that article VI, section 11 was intended to overrule *Boone County*, the contextual interpretation of the phrase "compensation of county officers" supports nothing more than the conclusion that it refers to salary. Nothing in the context of the passage of article VI, section 11 indicates that it was intended to blur the long-

standing constitutional distinction between compensation and pensions.

Second, the principal opinion asserts that the legislature interpreted article VI, section 11 as the constitutional authorization for enacting the PACARS statutes without violating the Hancock Amendment. The enactment of the statutes creating the PACARS fund was simply an exercise of legislative prerogative specifically authorized by article VI, section 25. Moreover, when the PACARS system was established in 1989, three years after the adoption of article VI, section 11, the state provided reimbursement to counties. As the principal opinion acknowledges, it was not until 1995 that the PACARS statutes were amended to require counties to contribute to the fund without state reimbursement. All this history indicates is that, in 1989, the legislature concluded that the amendment to article VI, section 11 was not applicable because pensions were not compensation. Subsequently, in 1995, the legislature may have reached the opposite conclusion. Ultimately, however, this legislative history is irrelevant for the simple fact that it is the courts, not the legislature, that interprets the constitution. The enactment of an unconstitutional statute does not serve as a basis for arguing that a statute is constitutional.

Finally, the principal opinion does not account for the fact that at no point, past or present, has the Missouri Constitution equated pensions and compensation. Both history and the current structure of the Missouri Constitution establish this fact. In *State ex rel. Heaven v. Ziegenhein*, 144 Mo. 283, 45 S.W. 1099 (1898), a retired police officer sought to enforce his statutory right to pension benefits. At the time, the state constitution provided that "the general assembly shall have no power to authorize any county, city, town or township or other political subdivision of the state now existing, or that may hereafter be established, to grant public money in aid of or to any individual, association or corporation whatsoever." *Id.* at 1099–1100. The retired officer argued that the pension payments were not a grant of public money in aid of individuals but, instead, were part of his compensation for police work. The court rejected this argument because the pension was not compensation:

> The act, however, is in all essential features simply a "pension law," and is properly so called. It cannot be treated merely as providing compensation for services rendered before retirement, and as part of the salary therefore. A salary, payable from time to time during active service, is received by each police officer, and the amount is fixed according to rank. The man who serves 20 years is entitled to no less during that period than he whose tenure is shorter. The policeman who remains on the force for 20 years less 5 days, and the one who retains his office for the full term, are paid during active service precisely the same sum, if they are of like rank. This must be deemed proper compensation for the time actually devoted to the public service. Nothing is withheld from the person who may serve 20 years, to be paid to him after he may be placed upon the "retired list"; and, after such retirement, he is no longer subject to police duty, and cannot be earning a salary.

The *Ziegenhein* case illustrates the longstanding distinction between "compensation" and pension benefits in the Missouri Constitution.

The principal opinion acknowledges *Ziegenhein* but asserts that *State ex rel. Emmons v. Farmer*, 196 S.W. 1106 (Mo. banc 1917), broadens the meaning of the term "compensation" to an all-encompassing term for "salary, fees, pay, remunera-

tions for official services performed, in whatever form or manner or at whatsoever periods the same may be paid." *Id.* at 1108. The issue in *Emmons* was whether paying court clerks by salary rather than by fee constituted a change in the method of compensation under a constitutional provision that barred an increase in the "compensation or fee" of a county officer during the term of office. In light of the specific issue presented, the holding of *Emmons* is simply that the term "compensation" includes both a salary and a fee. *Id.* The treatment of pensions under the Missouri Constitution was not and could not have been at issue in *Emmons* because there was no constitutional authorization for pensions until 1966, nearly 50 years after *Emmons* was decided. As such, the holding in *Emmons*—that "compensation" includes both a salary and a fee—has no bearing on the issue in this case.

The consistent distinction between pensions and compensation, expressly recognized in *Ziegenhein*, was carried forward with the adoption of the 1945 Missouri Constitution and subsequent amendments.[1] As illustrated in *Ziegenhein*, the constitution long has provided various limitations on public employee compensation. Notably absent, however, was any constitutional authorization of statutes providing for public employee pensions. It was not until 1966, with the passage of article VI,

section 25, that the Missouri Constitution authorized statutes providing pension benefits to local government employees. *Kansas City v. Brouse*, 468 S.W.2d 15, 16 (Mo. banc 1971).[2] If public employee pensions were a just another form of compensation, there would have been no need for the specific authorization of pensions in article VI, section 25. Courts presume every word, clause, sentence and provision of a statute has effect. *Civil Serv. Com'n of City of St. Louis v. Members of Bd. Of Aldermen of City of St. Louis*, 92 S.W.3d 785, 788 (Mo. banc 2003). The same presumption applies to the state constitution. The specific constitutional authorization of local government pension statutes was not superfluous. Article VI, section 25 was required because the term "compensation" as used in the Missouri Constitution does not include public employee pensions. The principal opinion relegates article VI, section 25, from the status of a substantive amendment to an exercise in redundancy. There is no persuasive reason to do so.

The principal opinion also misinterprets article VI, section 13, which directly addresses the issue and provides as follows:

> *All state and county officers,* except constables and justices of the peace, *charged with the* investigation, arrest, *prosecution,* custody, care, feeding, commitment, or transportation *of persons accused of or convicted of a criminal*

---

1. Of the more than two dozen constitutional provisions relating to compensation, none equates pensions with compensation. To the contrary, several provisions expressly limit "compensation" to salary and expense reimbursement. For instance, Article VI, section 12 provides that "[a]ll public officers in the city of St. Louis and all state and county officers in counties having 100,000 or more inhabitants, excepting public administrators and notaries public, shall be compensated for their services by salary only." Article VI, section 13 provides that "[a]ll state and county officers ... charged with the ... prosecution ... of persons accused of or convicted of a criminal offense shall be compensated for

their official services only by salaries ..." Article XIII, section 3.1 provides that state elected officials and judges shall receive compensation through "the salary rate established by law, mileage allowances, [and] per diem expense allowances." Each of these provisions excludes pension benefits from the state constitutional concept of "compensation."

2. In pertinent part, article VI, section 25 provides "that the general assembly may authorize any county, city, or other political subdivision to provide for the retirement or pensioning of its officers and employees...."

*offense shall be compensated for their official services only by salaries,* and any fees and charges collected by any such officers in such cases shall be paid into the general revenue fund entitled to receive the same, as provided by law. Any fees earned by any such officers in civil matters may be retained by them as provided by law. (Emphasis added).

Section 13 plainly provides that salary is the exclusive means of "compensation for county officers involved in the prosecution of criminal offenses." Prosecutors are county officers responsible for the prosecution of criminal offenses. The plain, unequivocal language of article VI, section 13 establishes that a prosecutor's compensation does not include pension contributions made on his or her behalf. The principal opinion dismisses article VI, section 13, on the grounds that it was intended to prohibit the older practice of a county officer being paid by fee. The end goal of article VI, section 13, very likely is to curtail the retention of fees for personal use. However, the means for realizing this end is the unequivocal statement that prosecutors shall be compensated "only by salaries." The language could not be clearer. Applying the plain language of article VI, section 13, as it is written is wholly consistent with the long-standing distinction between compensation and pensions.[3] It would create needless conflict between section 11 and section 13 to hold that term "compensation of county officers" as used in section 11 includes pension payments when section 13 provides that the compensation of county officers involved in criminal matters is limited to salary. Consistency demands that the phrase "compensation of county of

county officers" is held to refer to remuneration for official services, excluding pensions. The net result of such consistency is nothing more than prohibiting the state from forcing an unfunded mandate on local governments in violation of the Hancock Amendment.

I would hold that the phrase "compensation of county officers" as used in article VI, section 11 does not include the PACARS contributions required by section 56.807. Consequently, article VI, section 11 does not exempt PACARS contributions from the Hancock Amendment. While I would affirm the judgment, I also concur in the spirit of Judge Wolff's concurring opinion.

---

**3.** In footnote 7, the principal opinion indicates that applying article VI, section 13 as it is written means that a county officer could not receive a pension as elsewhere authorized. This illustrates the inconsistency of the approach adopted by the principal opinion, for this concern does not arise if, consistent

with every compensation and pension-related provision of the constitution, pensions are considered separate from compensation. Under this approach, there is no conflict because compensation does not include the pension benefits expressly authorized in article VI, section 25 and elsewhere.