STATE of Missouri ex rel. Courtney GEORGE, Appellant,

v.

Randy VERKAMP, Bud Dean, and Larry Stratman, as the duly elected and serving Commissioners of Phelps County, Missouri, County Commission, Carol Bennett as the duly elected and serving County Clerk of Phelps County, Missouri, and Carol Green, as the duly elected and serving Treasurer of Phelps County, Missouri, Respondents.

No. SC 92219.

Supreme Court of Missouri, En Banc.

May 15, 2012.

Joseph D. Baker, Baker Law Firm LLC, Osceola, for George.

Brendon Fox, Phelps County Assistant Prosecutor, Rolla, for the County Officials.

GEORGE W. DRAPER III, Judge.

This appeal turns on whether a midterm increase in compensation for a fulltime prosecuting attorney violates article VII, section 13 of the Missouri Constitution, which prohibits the compensation of state, county, and municipal officers from being increased during the term of office. Here, the midterm increase in compensation resulted from the application of a statutory formula for calculating compensation in place before Courtney M. George (hereinafter, "George") was elected or took office as the Prosecuting Attorney of Phelps County. As such, this increase in compensation did not violate article VII, section 13 of the Missouri Constitution. The preliminary writ of mandamus is made permanent.

### Factual and Procedural History

The facts are undisputed. On November 7, 2006, George was elected Prosecuting Attorney for Phelps County, Missouri, which is a full-time position. George's term as prosecuting attorney began January 1, 2007, and ended December 31, 2010. Section 56.265.1(1), RSMo 2000 [1] mandates that a full-time prosecuting attorney's compensation shall be equal to the compensation of an associate circuit judge. The compensation for an associate circuit judge is established by the Missouri Citizens' Commission on Compensation for Elected Officials (hereinafter, "the Commission") pursuant to article XIII, section

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

3 of the Missouri Constitution.[2] The Commission issued its report December 1, 2006, establishing the salary for an associate circuit judge as $106,181 per year, beginning July 1, 2007.[3] The same report established the salary for an associate circuit judge as $109,366 per year, beginning July 1, 2008.[4]

At the beginning of her term, George's salary was $96,000 per year. George did not receive any salary increases during her term in office despite the Commission's report increasing the salary for associate circuit judges in 2007 and 2008.

On November 18, 2010, George filed a petition for a writ of mandamus against the duly elected members of the Phelps County Commission, County Clerk, and County Treasurer (hereinafter, "Respondents"). In her petition, George asserted Respondents failed to perform their ministerial duties by refusing to approve and pay her an increased salary that corresponded with the compensation established by the Commission's report for associate circuit judges. George requested a preliminary order in mandamus compelling Respondents to approve the increased compensation rates effective July 1, 2007, and July 1, 2008, and order Respondents to issue her underpayment of her salary for the duration of her term in office.

The circuit court issued a preliminary order in mandamus, but later entered its judgment quashing the preliminary order after reviewing all of the pleadings. The court of appeals transferred George's case to this Court pursuant to Mo. Const. article V, section 11.

## Standard of Review

A litigant seeking mandamus must "allege and prove that he [or she] has a clear, unequivocal, specific right to a thing claimed." *State ex rel. Young v. Wood,* 254 S.W.3d 871, 872 (Mo. banc 2008) (quoting *Furlong Cos., Inc. v. City of Kansas City,* 189 S.W.3d 157, 166 (Mo. banc 2006)). "Mandamus does not issue except in cases where the ministerial duty sought to be coerced is definite, arising under conditions admitted or proved and imposed by law." *State ex rel. Collector of Winchester v. Jamison,* 357 S.W.3d 589, 592 (Mo. banc 2012) (quoting *Furlong, supra* ).

When a case is submitted on stipulated facts, the question this Court must resolve is whether the circuit court drew the proper legal conclusions from the facts stipulated. *Missouri Prosecuting Attorneys v. Barton County,* 311 S.W.3d 737, 740 (Mo. banc 2010). The circuit court's decision was based upon the interpretation and application of section 56.265 and various provisions of the Missouri Constitution to the stipulated facts; therefore, this Court's review is *de novo. Id.*

## Analysis

Article VII, section 13 states, "The compensation of state, county and munici-

2. Article XIII, section 3, subsection 1 provides in pertinent part: "[I]n order to ensure that the power to control the rate of compensation of elected officials of this state is retained and exercised by the tax paying citizens of the state ... no elected official, member of the general assembly, or judge, except municipal judges, shall receive compensation for the performance of their duties other than in the amount established for each office by the Missouri citizens' commission on compensation for elected officials established pursuant to the provision of this section."

3. The salary was calculated with a base salary of $101,088 per year and added an increase of $2,000 as a "differential reduction increase," and a 3 percent state employee raise for the fiscal year 2008 of $3,092.

4. This increase was due to a 3 percent state employee raise for the fiscal year 2009.

pal officers shall not be increased during the term of office; nor shall the term of any officer be extended." This provision's purpose is "to prevent persons while possessed of the prestige and influence of official power from using that power for their own advantage. . . ." *State ex rel. Scobee v. Meriwether,* 355 Mo. 1217, 200 S.W.2d 340, 341 (1947).

 "Despite its plain language, the Constitutional prohibition against midterm increases in compensation is not absolute." *Laclede County v. Douglass,* 43 S.W.3d 826, 828 (Mo. banc 2001). This Court has recognized limited exceptions to the prohibition to midterm increases in compensation. For example, an exception exists when "additional duties, extrinsic or not germane to the office, have been imposed in conjunction with the increase in compensation." *Id.* (citing *Mooney v. County of St. Louis,* 286 S.W.2d 763, 766 (Mo. 1956)). Further, this constitutional prohibition "does not apply when compensation is not fixed for the office at the commencement of the term, because nonexistent compensation cannot be increased." *Id.* (citing *State ex rel. Dwyer v. Nolte,* 351 Mo. 271, 172 S.W.2d 854, 856–57 (Mo. 1943)).

George relies heavily on *State ex rel. Moss v. Hamilton,* 303 Mo. 302, 260 S.W. 466 (Mo. banc 1924), which sets forth another exception. In *Moss,* the relator was elected Crawford County circuit court clerk in November 1918. The relator's term began January 1, 1919, and extended through December 31, 1922. The relator's salary was established by a statute enacted in 1915, that tied the salary of the circuit clerk to the population of the county. The statute contained a formula that calculated the county population by determining the number of votes cast in the presidential election, multiplying that number by five, and fixing the circuit clerk's salary de-

pending on the result. During the first two years of his term, the relator's salary was $1,600 per annum based upon the statutory formula using figures from the 1916 presidential election. After the 1920 presidential election, an application of the statutory formula would have entitled the relator to receive a salary of $1,950 per annum for the remaining two years of his term. Yet, the relator received only $1,600 per annum for all four years of his term. At the end of his term in office, the relator filed a writ of mandamus seeking to compel the payment of $700, which was the difference between what he earned and what he would have earned had he received the increase in salary after the 1920 presidential election. *Id.* at 467–68.

This Court found the 1915 statutory act was in effect when the relator was elected; therefore, the relator's salary "was fixed for his whole term, but was not in named dollars and cents for the whole term" and did not violate the prohibition against midterm compensation increases. *Id.* at 469–70. This Court explained:

> The effect of this act of 1915 was to say to relator, "Your salary shall be determined upon the presidential vote of 1916, until there is another presidential election, at which time your county may be in a lower [or] a higher class, according to the population indicated by the presidential vote." The salary, in amount, was fixed by law as to relator's office in any event. If his county was not subjected to a change of class, his salary was not changed. If his county (by a decreased population) dropped to a lower class, his salary was fixed, and was fixed before his election, although the change of class might give[ ] him a different amount. So too, if his county increased in population and thereby passed to a higher class, the existing law (that in force at the time of his election)

fixed for him a salary. True it was higher, but it was definitely fixed at the date of his election.

*Id.* After finding that the relator's salary was fixed before his election, and rejecting the county's equitable estoppel argument, this Court approved the midterm increase in the relator's salary. *Id.* at 471.

Respondents recognize these exceptions to the constitutional prohibition on midterm compensation increases exist, but argue that none of them applies to George's claim. Specifically, Respondents contend *Moss* is distinguishable because the reclassification of the county is what prompted the midterm pay increase in *Moss* and Phelps County was not reclassified here. *Moss* itself addressed this concern by shifting the focus from the county reclassification to the statutory formula, explaining, "The mere fact that a county passed from one class to the other does not deprive the holder of the office of the salary fixed by law, and fixed too, at a time long prior to relator's election." *Id.* at 470.

■ Like in *Moss*, there is a statutory formula or mechanism in place here that establishes the salary of prosecuting attorneys by tying it to associate circuit judge compensation, although not in "named dollars and cents." Article XIII, section 3, subsection 8 requires that the Commission meet every two years to review, study, and fix compensation for all elected state officials, members of the general assembly, and all judges, except municipal judges. After conducting its review, the Commission must file a schedule of compensation no later than December 1st of that year. This schedule of compensation shall become effective unless disapproved by a concurrent resolution adopted by a two-thirds majority vote of the General Assembly before February 1st of the year following the filing of the schedule. If the General Assembly takes no action, the schedule of compensation shall apply and represents the compensation for each affected person beginning on July 1st following the filing of the schedule.

It is undisputed that this constitutional mechanism for establishing the compensation for an associate circuit judge was in place before George was elected or took office as the full-time prosecuting attorney of Phelps County. The fact that the formula did not specify the "dollars and cents" of George's compensation did not preclude her from receiving the increase per this Court's holding in *Moss*. Because the General Assembly took no action to disapprove the Commission's schedule of compensation filed December 1, 2006, the increases in compensation the Commission recommended for associate circuit judges took effect July 1, 2007, and July 1, 2008, respectively. Section 56.265.1(1) ties the salary of a full-time prosecutor to that of an associate circuit judge by requiring that their compensation shall be equal. This Court must assume the General Assembly is fully cognizant of the constitutional limitation against increasing the compensation of a state officer during his or her term in office when enacting legislation. *Mooney*, 286 S.W.2d at 766.

### Conclusion

George was entitled to an increase in her compensation as the full-time prosecuting attorney of Phelps County because the increase resulted from the application of a statutory formula for calculating compensation that was in place before she was elected or took office. Accordingly, this increase in compensation did not violate article VII, section 13 of the Missouri Constitution per the holding in *Moss*.

The judgment is reversed, and the case is remanded. On remand, the circuit court shall calculate the underpayment to George and issue its writ directing Re-

spondents to pay the calculated amount and grant any other relief to which George is entitled.

All concur.